## GIBBON v. LOEWER SOLE–ROUNDER CO.

(Circuit Court of Appeals, Third Circuit. February 15, 1897.)

1. PATENTS—INVENTION—CUTTING IRREGULAR FORMS.

The production of a sole-cutting machine, consisting of the combination of a rotary cutter and its shaft on a fixed frame, with revolving clamps to hold the rough material mounted on a shaft on a movable carriage, and a revolving form operating to vary the relative positions of the cutter and the material, involves no invention, being a mere carrying forward of the Blanchard invention, for turning or cutting irregular forms.

2. SAME—INFRINGEMENT—SOLE-CUTTING MACHINES.

In the Loewer and Blair patent, No. 407,735, for an improved sole-cutting machine, the main idea is a mere application of the Blanchard invention for turning or cutting irregular forms, and the only novelty resides in the double drive gear applied to the three-part shaft; hence the patent is not infringed by a machine which omits this feature. 74 Fed. 555, reversed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was a suit in equity by the Loewer Sole-Rounder Company against Charles S. Gibbon for alleged infringement of a patent for an improved sole-cutting machine. In the circuit court the patent was adjudged valid and infringed as to claims 1, 4, 5, 6, 9, and 14 (74 Fed. 555), and the defendant has appealed.

Edmund Wetmore and E. E. Wood, for appellant.

George B. Selden, for appellee.

Before ACHESON, Circuit Judge, and BUTLER and WALES, District Judges.

ACHESON, Circuit Judge. The bill in this case charges the defendant, Charles S. Gibbon, with the infringement of letters patent No. 407,735, issued on July 23, 1889, to Henry Loewer and Barton L. Blair, for "an improved sole-cutting machine." The claims of the patent alleged to be infringed by the defendant are the 1st, 4th, 5th, 6th, 9th, and 14th. These claims are as follows:

"(1) In a sole-cutting machine, the combination, with the revolving cutter, C, and its shaft, of the revolving sole clamps, E, E′, their supporting shafts, the movable carriage, and a revolving form operating to vary the relative position of the cutter and the sole clamps, substantially as described."

"(4) In a sole-cutting machine, the combination, with the revolving cutter, C, and its shaft, and guide, s, of the revolving sole clamps, E, E′, clamp-plates, z, z′, removable form, f, and suitable supporting shafts, substantially as described.

"(5) In a sole-cutting machine, the combination, with the revolving cutter, C, and its shaft, and guide, s, of the revolving and traveling sole clamps, E, E′, form f, suitable supporting shafts, and movable blank guide, T, substantially as described.

"(6) In a sole-clamping machine, the combination, with the revolving cutter, C, and its shaft, and guide, s, of the revolving and traveling sole clamps, E, E′, suitable supporting shafts, and movable blank guide, T, provided with adjustable plate, y′, substantially as described."

"(9) In a sole-cutting machine, the combination, with the main frame, A, A′, supporting the revolving cutter, C, and its shaft, and the guide, s, of the movable frame, D, carrying the revolving sole clamps, E, E′, and form, F, and mechanism adapted to secure the simultaneous revolution of the sole clamps and the form, substantially as described."

"(14) In a sole-cutting machine, the combination, with the revolving cutter. C, and its shaft, provided with the spring guard, S, of the guide, s, and the revolving sole clamps, E, E', form, F, and suitable supporting shafts, substantially as described."

In considering this case, it is first to be noted that the art of cutting shoe soles by machinery was practiced long before Loewer and Blair entered this field of invention. The prior patents to Thompson, Addy, Smith, and Hartford show machines, operated by hand or power-driven, for trimming or cutting shoe soles to pattern, on and off the shoe, by a rotary cutter in some instances, and by a straight knife in other instances, and the employment of flat-faced clamps to hold the leather blanks; and the prior patents to Joyce, King & Strong and others show heel-trimming machines comprising a rotary cutter and a guide, a pattern plate, and a movable frame containing clamping members, between which the heel is held when turned by the hand of the operator against the cutter.

We find in the testimony of the complainant's principal expert (Mr. Osgood) a general description of the machine of the Loewer and Blair patent in the words following, namely:

"It consists of a machine in which a pile of leather blanks is placed between clamps, and moved up so as to bring their edges in contact with a rapidly revolving cutter head, which, as the blanks are slowly turned, trims off the surplus leather. The clamps are attached to a swinging frame, and the cutter head to a stationary frame. A pattern of the same outline as the soles to be produced is attached to the swinging frame, and rides against the edge of a guide wheel on the stationary frame. The contact of the pattern with the guide wheel throws the swinging frame forward and back, giving corresponding motion to the blanks held by the clamps, and causing the cutter head to cut the soles exactly to the form of the pattern."

This description enumerates the essential members and qualities of the complainant's machine (the Loewer and Blair machine), the features not here mentioned being the mere details of construction.

Now, it is quite evident that, in combination of essential parts, in principle and in mode of operation, the complainant's machine is identical with the ingenious machine invented and patented by Thomas Blanchard,—but by reason of the expiration of the patent now open to public use,—for turning or cutting irregular forms by using a model in conjunction with a blank, the outline of the model guiding the cutting tool to produce a duplicate from the blank. The Blanchard machine, as described in his specification and as long practically employed in the art to which it belongs, comprises a rotary cutter mounted on bearings on a stationary frame, and a guide wheel in alignment therewith, and a swinging frame carrying a model or pattern, and the rough material to be trimmed or turned, in such relations that, when power is applied to rotate the shafts, the swinging frame is yieldingly pressed towards the cutter and guide wheel, the pattern by its engagement with the guide wheel limiting the movement of the material towards the cutter, so that as the pattern and material are rotated the cutter trims off the periphery of the material so as to conform it exactly to the shape of the pattern. This machine is designated in Blanchard's patent as "Blanchard's Self-Directing Machine," and is declared to be available "for turning or cutting irregular forms out of wood, iron,

brass, or other material or substance which can be cut by ordinary tools."

In reproducing such irregular forms as shoe lasts, which vary in cross-sectional shape from point to point throughout their length, the cutter and guide wheel are required to travel lengthwise of the material and pattern, and this lateral movement Blanchard provided for by a longitudinal feed mechanism; but when the particular work to be done does not require such lateral movement, then, obviously, this feed mechanism may be disused or omitted altogether from the machine. As the feed mechanism is not needed in the work contemplated by Loewer and Blair, we find that it is left out of their machine. That omission, however, does not change the principle or the character of the machine.

In his patent Blanchard illustrates his machine as engaged in such work as the cutting of a shoe last, and appropriate devices for securely holding the material and model are described. The specification, however, discloses that the machine has the capacity of cutting and reproducing an "infinite variety of forms" out of any material or substance which can be cut by ordinary tools. The scope of the invention, then, is such that changes in the subordinate devices for holding the material while under the action of the cutter, to suit the particular work, are necessarily involved in the varying use of the Blanchard machine, and are within the intendment of the patent. Howe Mach. Co. v. National Needle Co., 134 U. S. 388, 397, 10 Sup. Ct. 570. Such mechanical adaptations involve merely the substitution of equivalents, and generally would call into exercise nothing beyond the commonest mechanical skill.

Clearly, leather is a material or substance within the scope of Blanchard's specification, and it cannot be doubted that the cutting of leather blanks, separately or in a bunch of many thicknesses, is but the application of the Blanchard machine to one of its legitimate uses. "The inventor of a machine is entitled to all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 18, 12 Sup. Ct. 601. Here, the patent having expired, all the uses to which the machine can be put are free to the public. Of course, the use of the machine in sole cutting involves the employment of a clamping device suitable to hold flat leather blanks, and for that purpose the natural selection—the one which, we think, would occur to any mechanic possessing the ordinary skill of his calling—would be the common flat-faced clamps which Loewer and Blair employ. In thus adapting the machine to the work of cutting sole leathers to patterns there was no inventive achievement. It is well settled that "a mere carrying forward, or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way, by substantially the same means with better results," is not invention in a patentable sense. Smith v. Nichols, 21 Wall. 112, 119; Trimmer Co. v. Stevens, 137 U. S. 432, 11 Sup. Ct. 150; Ansonia Brass & Copper Co. v. Electrical Supply Co., supra.

From what has been said, it follows that the court below gave to the

Loewer and Blair patent a broader construction than is allowable in view of the prior state of the art. That construction practically invests the complainant, as the owner of the patent, with the exclusive right to use a machine of the Blanchard type in the cutting or trimming of shoe soles. We think, however, that at the date of Loewer and Blair's improvement in sole-cutting machines, no patent could rightfully, issue for the broad combination in such machine of a revolving cutter and its shaft on a fixed frame, with revolving clamps to hold the rough material mounted on a shaft on a movable carriage, and a revolving form operating to vary the relative positions of the cutter and sole clamps. If, then, there is patentable novelty in Loewer and Blair's machine, it is to be found in the peculiar features of organization specified by them, and the claims must be limited accordingly. The specification of the Loewer and Blair patent describes, and the drawings illustrate, a three-part shaft, the pattern and the clamped sole leathers being held between the sections of the shaft in the manner specified, and a simultaneous and positive rotary movement is imparted to the two end parts of this shaft by actuating mechanism effecting a double drive. In the first claim of the patent the term "supporting shafts" must, we think, be construed to mean the described three-part shaft, and the phrase, "revolving sole clamps, E, E', * * * substantially as described," must be taken as including the mechanism for producing the double drive. The double drive gear applied to the three-part shaft seems to us to be the novelty of this claim. This feature is not found in the machine of the appellant (the defendant below). His machine does not contain a three-part shaft nor the double-driving mechanism. The working organization of his machine conforms to that of the old King heel-trimming machine, and the hand of the operator turns the shaft to present the stock to the cutter. Upon our construction of this claim, the appellant's machine does not infringe the Loewer and Blair patent. The first is the broadest claim, and, as that claim is not infringed, there is no infringement of any of the other claims here in question.

These views require a reversal of the decree. Accordingly the decree of the circuit court is reversed, and the cause is remanded to that court, with directions to enter a decree dismissing the bill of complaint, with costs.