## RAWSON & EVANS CO. et al. v. ATLAS GLASS & MIRROR CO.

### No. 8584.

District Court, N. D. Illinois, E. D.

July 1, 1930.

Harry C. Alberts, of Chicago, Ill., for plaintiffs.

Haight, Adcock & Banning, of Chicago, Ill., for defendant.

LINDLEY, District Judge.

Plaintiffs sue to recover for alleged infringement of patent No. 1,281,262 granted October 15, 1918, to Felix O. Andres, for improvement in processes of coating glass with precious metal. The defenses relied upon are invalidity and non-infringement.

Claims 1 and 2 as modified by a disclaimer filed a few days before trial, with the modifications underlined, are as follows:

1. "The method of gold plating a transparent article, the steps of which comprise in applying to the surface to be treated a body to which gold will adhere, then applying by flowing thereover and without the application of heat, a solution containing chloride of gold, potassium carbonate and sugar *diluted as a substance effective to control or regulate the chemical reactions*, permitting the gold to settle in a film coating on the treated surface, removing the excess of the solution by permitting the same to flow therefrom on the tipping of the article and then applying to the film of gold a *protective* toning backing of silver solution having nitrate of copper intermixed therewith."

2. "The method of gold plating the surface of a transparent article, the steps of which comprise in treating the surface thereof to free the same of foreign substance, then applying to the surface a metallic deposit to which gold will adhere, applying to said base by pouring thereover and without the application of heat either to the article or to the solution an alkaline solution *sufficiently diluted to control or regulate the chemical reaction with* (containing) chloride of gold, permitting the gold to deposit thereover as a film coating, removing the excess of the solution by tipping the article to permit the same to flow therefrom, then toning the color of said film coating by applying thereto a solution containing nitrate of copper."

When the application was presented, the Patent Office, upon the references of Pratt No. 354,343, December 14, 1886, and Cowper-Coles (British) 2396 of 1909, consistently refused the grant as to all claims presented which did not include the element of nitrate of copper intermixed with the silver solution for backing. From this it is evident that that Office could not discover in the application, any invention, until the applicant added the requirement that to the backing solution of silver there should be added nitrate of copper.

Pratt's patent related to an improved process of gilding glass, and he followed the same general method as Andres. Both pre-

pared the glass by applying thereto a solution of tin; then rinsed the same and applied a liquid solution containing a chloride of gold mixed with an alkali plus a reducing agent, which caused the gold to become deposited upon the glass being gilded. They then poured off the excess solution and put upon the deposit of gold a silver solution backing, Andres describing his as being "a silver solution containing a few drops of nitrate of copper dissolved in water," and Pratt his as "a solution of nitrate of silver and ammonia with a certain amount of Rochelle salts." Andres relied upon the copper nitrate to provide a dark backing, while Pratt varnished and painted the silver backing. The two methods differed in that Pratt heated his table upon which the glass was placed, while Andres used no heat. The Patent Office was of the opinion that the absence of heat specified by Andres did not amount to invention for the reason, as stated by the Examiner, that "no invention recites in omitting to heat." "The speed of most reactions depends upon the temperature and this may be varied as desired."

Pratt and Andres also differed in the compounding of the solutions used, Pratt saying that he made use of three parts of chloride of gold with forty parts of water, one part of caustic soda with twenty parts of water, and glycerine and water in equal parts, preferably plus a few drops of mannite, and then mixed the first two solutions thoroughly and added them to the third solution just before using. Andres mixed 1 ounce of gold chloride in one gallon of water; 1½ ounces of potassium carbonate in one gallon of water, plus 2 ounces of the first solution, and made a third solution of 35 grams of sugar in two gallons of water. He then made a fourth solution consisting of one part of solution No. 1; two parts of solution No. 2 and four parts of solution No. 3. He made no claim for this specific compound in his claims.

Cowper-Coles apparently had somewhat the same idea in mind, for he treated the surface of glass with stannous (tin) chloride and a binding agent such as jewellers' rouge, and, after so preparing it, immersed it in a gilding solution composed of gold chloride to which an alkali and a preparation of glucose had been added. He stated that by properly adjusting the proportions of the gold solution and the reducing agent, viz., the glucose, a continuous film of gold would be deposited. He said that the proportions of ingredients found satisfactory were: 1 per cent. of gold chloride; 7 per cent. of pure sodium hydroxide, and 5 per cent. of glucose. In view of the character of the substances employed, it is certain that before he could succeed with his method those substances were diluted.

Henley, in his Twentieth Century Book of Recipes and Formulas, published in 1910, suggested that in order to produce gilding on glass there should be prepared three solutions, viz., 20 parts of gold chloride in 150 gallons of water; 5 parts of dry sodium hydrate in 80 parts of water; and 2½ parts of starch sugar in 30 parts of water; 20 parts of spirit of wine; 20 parts of pure 40 per cent. aldehyde. He directed that these articles should be mixed in the proportion of 200, 50, and 5 parts, whereupon the mixture should be poured upon the glass previously cleaned, saying that the gilding would be effected in a short time.

Appleton, in his Cyclopedia of Applied Mechanics, published in 1880, diluted chloride of gold with distilled water in the proportions of one gram of gold to 200 cubic centimetres of liquid; and then added an alkaline solution (caustic soda) until the liquid produced an alkaline reaction. His reduction agent he obtained by running illuminating gas through a quart of alcohol for about an hour. He added this to the alkaline solution of gold chloride in the proportions of 2 to 3 cubic centimetres to 200 cubic centimetres of the latter. He stated that after a time the gold is deposited. He added that to the alcoholic solution of gas an equal quantity of glycerine might be added.

It is apparent that all of these parties had in mind the same general idea, viz., the deposit of chloride of gold from an alkaline solution to the back of glass, by the aid of some one of the reducing agents, which, it is commonly recognized, includes sugars, glucose, glycerine, aldehydes, formaldehyde, and similar chemical compounds.

Andres' claims of themselves teach nothing as to the precise character and proportions of the elements going into his solution.

Inasmuch as descriptions are usually considered for the purpose of construing claims (Pitts v. Wemple, Fed. Cas. No. 11194, 1 Biss. 87), and as claims should always be construed in the light of the description (Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 493, 23 L. Ed. 952; Howe Machine Co. v. National Needle Co., 134 U. S. 395, 10 S. Ct. 570, 33 L. Ed. 963), it follows that every claim is to be read as impliedly including the words "substantially as described." Matthews v. Shoneberger (C. C.) 4 F. 635; Olds v. Brown (C. C.) 41 F. 698;

Jewell Filter Co. v. Jackson (C. C. A.) 140 F. 340; National Tube Co. v. Mark (C. C. A.) 216 F. 507. It is obvious, therefore, that the language of the claims "a solution containing chloride of gold, potassium carbonate and sugar" can be read only in the light of the description and specifications of Andres, wherein he specifically defines the diluted solution which plaintiffs now claim to be the basis of his invention. Thus, to construe the language of the claims in the light of the specifications defines for us the gilding solution of Andres and distinguishes it from that of Pratt, who speaks of a diluted solution of chloride of gold, with caustic soda and glycerine. Each of them had in mind the use of a diluted solution of a chloride of gold with an alkaline solution and a reducing agent. So, too, Henley's formula made use of a diluted solution of gold chloride with an alkaline solution and a reducing agent, the basis of which was sugar and aldehyde. Cowper-Coles prescribed a gold chloride and an alkali (sodium potassium) and the reducing agent of glucose. The process of each of these predecessors of Andres would, without the interposition of further explanation, come within the language of Andres, limited as it is by disclaimer, viz., "a solution containing chloride of gold, potassium carbonate and sugar sufficiently diluted to control or regulate the chemical reactions." If Andres is to be credited with achieving success over the prior art, therefore, it must be because in his claim he meant the specific diluted solution mentioned in his description; otherwise his claims are invalid because within the prior art, unless the addition of the nitrate of copper in the backing itself achieved invention. Consequently, the validity of his patent depends upon a claim for the application of a diluted solution of the specific character described by him, and if valid it must be held to the narrow limits of such invention, so limited and so restricted.

██ The burden of proving infringement is upon the plaintiffs. The stipulated evidence is that defendant uses an unheated solution of gold chloride and water, mixed with a solution containing potassium carbonate, formaldehyde, and water, which is poured upon the glass, which is thereafter heated. The chemical reaction effects the precipitation of the gold uniformly upon the treated surface. There is no evidence of the proportions of the different substances used in this solution. There is nothing to furnish light as to how defendant's solution is made. There is no evidence that defendant has made use of a solution such as Andres claimed and described.

Furthermore, defendant does not use nitrate of copper in the backing. While I am of the opinion that the inclusion of this element did not achieve invention, yet, if it was an essential element of plaintiffs' claim, as held by the Patent Office, defendant's process does not infringe such element.

In the light of the Patent Office history and the prior art, it is manifest that Andres' claims must be (1) construed according to their specifications and description, and (2) limited narrowly to the specific solution there claimed. Otherwise we ignore the teachings of the prior art, all of which included the idea of the use of diluted solutions of chloride of gold, an alkali, and a reducing agent. When Andres' claims are thus properly limited to his own specific solution, plaintiffs have failed to sustain the burden of proof to show infringement of the same.

Accordingly, the bill will be dismissed for want of equity, at the costs of the plaintiff.