**MURRAY COMPANY OF TEXAS, INC.,**
Appellant,

v.

**CONTINENTAL GIN COMPANY,**
Appellee.

No. 17217.

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1959.

Rehearing Denied April 3, 1959.

Hector M. Holmes, Boston, Mass., Garrett R. Tucker, Jr., Houston, Tex., James A. Simpson, Robert McD. Smith, Birmingham, Ala., Richard F. Walker, Boston, Mass., Frank B. Pugsley, Houston, Tex., William W. Rymer, Jr., Boston, Mass., of counsel, for appellant.

Henry L. Jennings, Woodford R. Thompson, Jr., Hugh P. Carter, Ernest L. All, Birmingham, Ala., Jennings, Carter & Thompson, Birmingham, Ala., of counsel, for appellee.

Before CAMERON and WISDOM, Circuit Judges, and WRIGHT, District Judge.

J. SKELLY WRIGHT, District Judge.

Plaintiff, appellee here, charges the defendant, appellant here, with infringement of its Brooks patent No. 23,044, issued in 1948, entitled "Cotton Cleaning Apparatus." Appellant, the Murray Company of Texas, interposes the usual defenses of invalidity and noninfringement. The district court, on findings

and conclusions prepared and submitted by the prevailing party, held the patent valid and infringed. We hold the Brooks patent invalid for want of invention over the prior art.

The patent covers an apparatus for cleaning lint cotton, which is cotton fiber removed from the seed by ginning. Although the patent indicates that the machine is a general lint cotton cleaner, actually its primary use, as shown in the patent, is in connection with the ginning operation. Cotton which is picked manually ordinarily does not require cleaning between ginning and baling for delivery to the mill. With the advent of mechanical pickers after World War II, gin house cleaning became a necessity because of the bits of leaves and other trash picked up by the mechanical picker.

Cotton has long been cleaned at the mill, before being spun into thread, by conventional lint cotton cleaners well known in the art. What the Brooks patent does is simply combine the elements of conventional lint cotton cleaners as found in the mills and place them in a gin house environment. Actually Brooks, the patentee and vice-president of appellee, Continental Gin Company, first applied for a system patent covering the processing of cotton from gin to baling press, passing through a cleaner en route. In the traditional ginning operation before mechanical picking, the cotton was passed from the gin, to a condenser, [1] and thence down a slide to the baler without passing through a cleaner. Brooks was required by the Patent Office to divide his system patent so that the cleaner shown therein, although part of the system, was patented separately. Murray, the accused infringer of the

lint cotton cleaning patent, is a licensee under the Brooks system patent. Murray, therefore, has been granted the right to use the system but not the lint cotton cleaner.

### The Patent in Suit.

The Brooks patent in suit, the lint cotton cleaner, receives the cotton from a condenser, not part of the patent, down a slide in a wide, thin bat through cylindrical feed rollers which pinch or press the fibers close together. The feed rollers feed the cotton to the periphery of a large rotating cylinder equipped with saw teeth to which the cotton adheres. Centrifugal force presses the heavier trash in the cotton slightly outward, and away from the saw cylinder, where it is struck by cleaning bars, fixed in place close to the periphery of the rotating saw cylinder, which bars sever the trash from the fiber while keeping the fiber on the cylinder. The trash falls into the lower part of the casing which covers the entire machine. Fiber thrown off by the cleaning bars is blown back to the gin for reworking. The mass of the cotton still adhering to the saw cylinder is taken off, or doffed, by a cylinder equipped with brushes which passes the cotton through a flue and in the direction of the baling press. A wall separates the doffer from the trash compartment, thus preventing trash thrown off the saw cylinder from mixing with the clean cotton. In short, what the Brooks patent in suit shows is the conventional and well-known feed roller, the equally conventional and well-known saw cylinder, the traditional doffer, the customary casing with a wall to keep trash separated from the clean cotton, plus a means to convey away the trash.

1. In the ordinary ginning operation, the lint cotton is airborne through a conduit by the air current of the gin doffing means, from the gin to a condenser, which is a slowly revolving horizontally disposed, cylindrical cage, upon the perforated peripheral surface of which the lint cotton and its carrying current of air are impinged, the air entering the cage through the perforations and being evacuated by suction through the ends of the cylinder, while the lint cotton is deposited and carried around upon the outer surface of the cylinder until it is doffed, or removed, therefrom in a thin continuous bat, or sheet, by the customary pair of driven doffing pinch rollers. The Brooks system patent follows the traditional cotton ginning operation except that a cleaner is placed between the condenser and the baling press.

The claims in suit are 3, 4, 5 and 6. Claim 3 calls for a lint cotton cleaner comprising a relatively wide casing, a rotating saw cylinder in widely spaced relation with a wall of the casing, feed rollers mounted over the saw cylinder adapted to feeding cotton in a relatively thin uniform bat, a plurality of cleaning bars extending parallel to the axis of the saw cylinder, a conveyer means for disposal of trash, a recovery means for lint thrown off the saw cylinder in the cleaning operation, a doffing means and a wall separating the doffing means from the trash compartment. Claim 4 is generally similar to 3 except that it is not limited to a "plurality of cleaning bars." In other words, Claim 4 of the patent covers one cleaning bar. Claims 5 and 6 are similar to 4 except that a single disposal means for trash and lint thrown off the saw cylinder is claimed. In Claims 5 and 6, therefore, the cotton thrown off with the trash would not be recovered.

Brooks, although an officer of a large cotton machinery manufacturer, had no drawings, no plans, no diary, no documents which showed the conception and development of his patent. He testified he conceived the idea sometime in 1944, but there is no evidence of any experimentation pursuant to this conception, nor was any machine, as shown in the patent, ever built. Nor is it shown whether Brooks' conception related to his system which he patented or the cleaner patent in suit. The record does show that Brooks was present at a meeting at Memphis early in 1945 attended by representatives of the cotton industry and that problems attendant on mechanization in the cotton industry were discussed. It was shortly after this meeting that Brooks filed his patent application for a system patent, subsequently divided as above indicated.

The Continental Gin Company, as owner of the patent, on the issue of validity sought to show a long-felt need in the industry for a lint cotton cleaner, as well as commercial success of its machine. The evidence indicates that in 1946 80% of the cotton in this country was still picked manually, though it was apparent to the industry, as indicated at the Memphis meeting, that mechanization was on the way. In fact, the Government, before World War II, had made experiments with gin house cleaning, using the lint cotton cleaners then found in the mill. These experiments were not satisfactory although some cleaning was accomplished using the conventional cleaners, particularly the Garner regin.

The machine manufactured by appellee, Continental Gin Company, is indeed a commercial success. But the commercial machine is substantially different from the patent. The slide feed to the cleaner from the condenser has been eliminated so that now the feed rollers of the cleaner are fed directly from the condenser doffing rollers. The position of the feed rollers, with respect to the saw cylinder, has been changed and instead of using two smooth feed rollers, as shown in the patent, one is now serrated. In addition, a control bar has been added which keeps the cotton from flaring away and being thrown off the saw cylinder, thus eliminating excessive throw-off of cotton and the necessity for the cotton recovery means shown in the patent. The drawing out, or stretching, of the bat between the condenser doffing rolls and the feed rolls, now an important part of defendant's commercial machine, is nowhere taught in the patent. In fact, a cleaner as shown in the patent has never been manufactured commercially by Continental.

It is common ground that the elements in the Brooks patent present nothing new. Each of them has been in the public domain for many years. Continental contends, however, that its combination is new, that its machine achieves a new result, that this new combination and new result were not obvious to one having ordinary skill in the art. Murray, defendant-appellant, argues that the Brooks combination is but an aggregation of old elements performing the same function in the same way, that Brooks contributed nothing to the sum of useful knowledge in the cotton cleaning art,

and that to give him and his employer a monopoly in the cotton cleaning art would take from the public that which it has long known and used.

### The Prior Art.

The prior art discloses many cotton cleaners having the same combination of elements shown in Brooks: feeding means, a rotating saw or toothed cylinder with an ample casing, one or more cleaning or whipping bars, and doffing means. Some of these prior art cleaners also include trash disposals together with a protective wall to separate the clean cotton from the mixed trash and lint. In 1882 the Faulkner patent [2] was issued. It provides for feed rollers, rotating saw cylinder, cleaning bars and doffing means, all very similar in organization and operation to the combination shown in Brooks. Faulkner was not cited by the Patent Office during the prosecution of the Brooks application.

The Schorsch patent [3] issued in 1932 shows a machine for cleaning lint cotton preparatory to spinning. In Schorsch, the cotton is received from a condenser, as in Brooks, in the form of a "bat or fleece" and is fed to the conventional rotating saw or toothed cylinder by a conventional feeding means, this time a feeder roller and plate. The cotton is whipped against cleaning bars, as in Brooks, and is doffed by a doffing brush, also as in Brooks. In fact, the only feature in Brooks absent in Schorsch is a specific means for removing from the bottom of the casing lint and trash thrown off in the cleaning operation. Schorsch was not cited by the Patent Office.

In Oxley, [4] issued in 1925, there is shown a lint cotton cleaner in which cotton passes from a condenser to the toothed cylinder of the cleaner by means of feed roller and plate. The cotton is whipped around against cleaning bars, called knives in the patent, and the clean cotton is doffed by a carding drum which arranges the fibers in parallelism for spinning. As with Schorsch and Brooks, lint cotton fed to the rotating cylinder comes directly from the doffing rollers of a condenser in the form of a thin, uniform bat. Oxley also has means to convey away trash plus a wall separating the trash from the clean cotton. Oxley was not cited by the Patent Office.

In 1919 the Howorth patent, [5] cited by the Patent Office, was issued. It is designed to clean and salvage cotton thrown off with trash in the picker operation. Like Brooks, it includes a feeding means closely adjacent to the toothed cylinder and adapted to feed a bat from a condenser to the cylinder, cleaning bars in the customary position close to the cylinder, doffing means and separating wall. Howorth also provides a belt for conveying away "sand or other similar impurities," indicating that means for conveying away trash was not unknown to the art. Other patents of cotton mill cleaners showing most, if not all, of the elements of Brooks are Thoma No. 1,-559,475 of 1925 and Hollerung No. 2,-238,055 of 1941.

In addition to the cotton mill cleaners anticipating Brooks, there is a series of regin patents covering cleaners designed for cleaning lint cotton in damaged bales. No regin patents were cited by the Patent Office. The Pettit Patent No. 1,401,-439 of 1921 shows a cleaner of the regin type. It includes a conventional means for feeding cotton to a rotating saw cylinder within a casing together with cleaning bars, all as in Brooks. Doffing from the saw cylinder is accomplished by an air blast, a means well known in the art. There was also shown in Pettit a trash removal means.

The series of Garner regin patents is also important in the prior art. In 1926 Garner No. 1,574,344 was issued. It shows a rotating toothed cylinder being fed a "bat" of lint cotton by feed rollers. A cleaning brush, together with an air blast for doffing, is also shown. Cotton

2. Faulkner Patent No. 258,397.

3. Schorsch Patent No. 1,889,615.

4. Oxley Patent No. 1,567,541.

5. Howorth Patent No. 1,299,185.

thrown off by the cleaning brush is recirculated for further cleaning and separate disposal means for removing trash is provided. Garner No. 1,527,859, issued in 1925, shows a brush doffer protected by a wall, recirculation means for thrown off lint and removal means for trash. These early Garner patents show everything of substance disclosed and claimed by Brooks, except one or more cleaning bars for which they substitute a cleaning brush. Beginning in the early 1930's Garner made and sold commercially regins for cleaning cotton from dirty or damaged bales. In these cleaners the cleaning bar, as in Brooks, is used.

The Garner commercial regin includes feed rolls feeding to a saw cylinder, cleaning bar, doffing means, means for recirculating and means for disposal of trash. It was this machine which the Government tested in 1941 while experimenting with gin house cleaning of mechanically picked cotton. In the experiment this machine did clean cotton but it had two drawbacks: excessive throw-off of fiber and insufficient capacity[6] for use with a gin. The excessive throw-off apparently was a result of using only one cleaning bar, thus allowing cotton to flare out from the saw cylinder before it reached the doffing means. Its lack of capacity was attributable to its size. The Garner commercial regin also called for the delivery of the cotton to the feed rolls of the cleaner in a continuous bat. Thus the Garner commercial regin includes every element of Brooks operating in the same way as Brooks.

### Validity.

 The presumption of validity attends the grant of a patent and the *burden of persuasion of invalidity is on the putative infringer.* Radio Corpora-

tion of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163; 35 U.S.C. § 282. The presumption is strengthened when it appears that the Patent Office has considered and distinguished the prior art relied on as anticipation. Southern States Equip. Corp. v. USCO Power Equip. Corp., 5 Cir., 209 F.2d 111. But where, as here, the Patent Office has failed to consider pertinent art, the statutory presumption of validity is greatly weakened.[7]

 To be patentable, it is not necessary that the machine be broadly or generically new. It is sufficient if its novelty is but an improvement on a prior patent, in which event patent rights thereunder are strictly limited to its precise form and elements. Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; 35 U.S.C. § 101. A machine composed of elements of the prior art is patentable if the combination produces a new and useful result. Leeds & Catlin Co. v. Victor Talking Machine Co., 213 U.S. 301, 29 S.Ct. 495, 53 L.Ed. 805; Jeoffroy Mfg. v. Graham, 5 Cir., 219 F.2d 511. But a mere aggregation of old elements performing no new functions and achieving no new result is not patentable. Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U. S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Keystone Driller Co. v. Northwest Engineering Corp., 294 U.S. 42, 50, 55 S.Ct. 262, 79 L.Ed. 747; Powers-Kennedy Contracting Corp v. Concrete Mixing & Conveying Co., 282 U.S. 175, 186, 51 S.Ct. 95, 75 L.Ed. 278. As stated by the Supreme Court in *Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corp.,* 340 U.S. 147, 152, 71 S.Ct. 127, 130, 95 L.Ed. 162: "A patent for a combination which only unites old elements

---

6. All of the prior art mill cleaners and regins were of insufficient capacity for use behind a gin. But as will be shown infra, mere enlargement is not invention.

7. In Rosaire v. Baroid Sales Division, National Lead Co., 5 Cir., 218 F.2d 72, 75,

this Court said: "This article was not considered by the Patent Office and the patents were therefore greatly weakened and they lack the presumption of validity that would otherwise exist." See also Jacuzzi Bros. v. Berkeley Pump Co., 9 Cir., 191 F.2d 632, 634.

**70**

with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

 Tested by the teachings of these authorities, it is obvious that the patent in suit is invalid for want of invention over the prior art. Brooks did nothing more than take well-known elements of cotton mill cleaners and place them in a gin house behind a gin without changing their function and without producing a new result. The idea of placing a cleaner behind a gin was a good one but it was not new. It was disclosed in the Washburn patent[8] in 1911. Even if it were new, its application would not amount to invention, but merely to double use, since applying an idea from an analogous art is not invention. Powers-Kennedy Contracting Corp. v. Concrete Mixing & Conveying Co., supra; Lovell Manufacturing Co. v. Cary, 147 U.S. 623, 639, 13 S.Ct. 472, 37 L.Ed. 307; Howe Machine Co. v. National Needle Company, 134 U.S. 388, 397, 10 S.Ct. 570, 33 L.Ed. 963; Carbide & Carbon Chemicals Corp. v. Texas Co., 5 Cir., 31 F.2d 32, 33. Nor can invention inhere in mere increased size and capacity because "mere enlargement is not invention." Planing-Machine Company v. Keith, 101 U.S. 479, 490, 25 L.Ed. 939; Pennington v. National Supply Co., 5 Cir., 95 F.2d 291, 295.

In sum, the patent in suit does not meet the constitutional requirement of invention. It does not tend "to promote the Progress of Science and useful Arts." U.S.Const. art. 1, § 8, cl. 8. Nor does it meet the test of invention required by Congress. 35 U.S.C. § 103.[9] What Brooks, and his employer, the Continental Gin Company, did simply was "to watch the advancing wave of improvement" and attempt to "gather its foam in the form of patented monopolies" which would enable them "to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts." Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S. Ct. 225, 231, 27 L.Ed. 438.

Reversed.

8. Washburn Patent No. 995,993.

9. See also Stabler v. Bright Leaf Industries, Inc., 5 Cir., 261 F.2d 383.