NEW DEPARTURE BELL CO. v. BEVIN BROS. MANUF'G CO.

(Circuit Court of Appeals, Second Circuit. February 20, 1896.)

1. PATENTS—INVENTION.
There is no invention in the insertion of an additional gear and pinion wheel in a train of such wheels arranged to transmit motion, or in substituting a reacting spring at one end of the train of motion for a similar spring at the other end.

2. SAME.
There is no invention in inclosing the operative mechanism of a bell in an old form of bicycle, double-dish shell, when used for a bicycle bell, instead of mounting it on a standard, for a call bell; affixing it to a door

jamb, for a door bell; or arranging it to engage with an opening window sash, for a burglar alarm.

3. SAME—BICYCLE BELLS.

The Rockwell patent, No. 471.982, for a bicycle bell, consisting of a combination of a base plate, with a revoluble striker bar, spring-actuated in one direction, a lever operatively connected therewith, and adapted to rotate the striker bar in opposition to the force of the spring, and a gong, *held* invalid because of anticipation by the English patent, No. 2,425, of June 22, 1877, to Alfred Bennett, for improvements in call bells, door bells, etc. 64 Fed. 859, reversed.

This is an appeal from a final decree of the circuit court for the district of Connecticut on pleadings and proofs, sustaining the validity of letters patent No. 471,982, enjoining defendant from infringing the same, and directing the payment by defendant of $175 as profits and damages by reason of acts of infringement by it committed. 64 Fed. 859.

Chas. L. Benedict, for appellant.

John J. Jennings and Frederick N. Betts, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The bill of complaint charged infringement of three patents, all granted to E. D. Rockwell, assignor to complainant, as follows: No. 456,062, July 14, 1891; No. 471,-982, March 29, 1892; No. 471,983, March 29, 1892; the first two relating to improvements in bicycle bells; the third intended for and adapted to stationary bells used on doors. The circuit court sustained the validity of all three patents, but held that defendant had not infringed either No. 456,062 or No. 471,983; and from this decision complainant has not appealed. The only questions, therefore, coming up for review here, are as to the validity of No. 471,982, and whether defendant's bicycle bell infringes.

The specification states that the object of the invention is to—

"Produce a bicycle bell that is compact, simple, strong, durable, and reliable, and by which a sound resembling an electric bell, but of increased ·purity of tone, may be produced."

The details of complainant's device, and its advantages, are fully set forth in the brief of his counsel, as follows:

"It consists of an alarm bell, capable of construction in any size, and light or heavy, according to the taste and needs of the user. It is attractive in appearance, and capable of attachment to the handle-bar in such a way that only the thumb of the rider is needed to sound the alarm, and the grip of the hand upon the bar is not materially interfered with. Very few parts are necessary for its construction, and these are of such a character, and so combined, as to form a structure very strong, not easily thrown out of order, and capable of safely experiencing any ordinary accident to which it is likely to be subjected. It is inexpensive to manufacture. * * * The bell consists of a base plate which is dish-shaped, and contains and protects the intermediate mechanism, in a compact form, between the base plate and the gong. The base plate is of such form that means can be and are provided for affixing the bell to the bicycle handle bar. In the form shown a gong is provided, which is joined firmly to the base plate by means of a screw. A lever of convenient form is pivoted to the base plate, one end being a thumb piece projecting beyond the circumference of the bell, and the other carries a segmental gear. This gear engages with a pinion upon a gear wheel, which, in turn, meshes

with a pinion upon one side of the striker bar, which is loosely pivoted upon a stud. The striker bar carries loosely-pivoted strikers. A tensile spring attached to the lever tends to keep it in one position, and operate the striker bar in reverse direction to the direct action of the thumb-pressed lever."

The gong, so says the specification, is—

"Preferably provided on one side with a lug against which the strikers impinge when the striker bar is revolved, producing a clear, musical sound. * * * Hand pressure upon the handle [i. e. the thumb piece] will operate the lever, and, through the train of gearing, impart several revolutions to the striker bar. When the handle is released the spring will retract the lever to its first position, and cause the striker bar to revolve in the opposite direction."

The second claim of the patent, which is the only one which it is claimed defendant infringes, is as follows:

"(2) The combination, with a base plate, of a revoluble striker bar, spring-actuated in one direction, a lever operatively connected therewith, and adapted to rotate the striker bar in opposition to the force of the spring, and a gong, substantially as set forth."

The specification states:

"The form of the striker bar is immaterial; a revoluble head, adapted to carry strikers, being the essential characteristic."

The form shown in the patent is the one patented by the same inventor in No. 459,602. Of such a striker bar the judge who tried the cause in the circuit court says:

"Various suggestions are made in support of the claim of novelty in the centrally pivoted swinging arm. Thus, it is said that the arm must extend almost across the inside of the gong, and be adapted to swing around the entire diameter. But the Bennett patent [referred to infra] shows the arm swinging around the entire diameter of the gong, and it surely would not require invention to duplicate said arm by extending it in the same way on the opposite side."

And he found patentable novelty in complainant's striker-bar patent solely because of the form and arrangement of its strikers. The statement above quoted from the specification precludes reading into the second claim of this patent any peculiar form or arrangement of the strikers themselves.

Conceding that complainant's bicycle bell is compact, simple, durable, reliable, convenient, and attractive, it does not necessarily follow that it exhibits patentable novelty. Whether it is or is not an invention is a question to be determined by a reference to the state of the art prior to Rockwell's application, September 17, 1891. Of the many bicycle bells introduced in evidence, it will be sufficient to refer to two only,—the "Starr Bros. bell, of March, 1890," and the "Bevin Bros. bell, of July, 1891." These bells, in the following particulars, are practically identical with complainant's. They are alarm bells, capable of construction in any size, and light or heavy, as desired. They are attractive in appearance, and capable of attachment to the handle bar in such a way that only the thumb of the rider is needed to sound the alarm, the grip of the hand on the bar not being interfered with. Each of them has a base plate which is dish-shaped, and contains and protects the intermediate mechanism, in a compact form, between the base plate and gong. Each base plate is of such form that means of attachment can be and are

provided for affixing the bell to the bicycle handle bar, and the gong is fastened to the base plate by means of a screw. Each apparatus is set in motion by pressure upon a thumb piece projecting beyond the circumference. The interior mechanism of these Starr and Bevin bells is materially different from that of complainant's, but these and many other exhibits show that it was old in the art to form a bicycle bell of two shells, one being a base plate to hold the mechanism, the other a cover to protect it and also to act as a gong; to actuate the operative parts by pressure on a thumb piece conveniently protruded through the slot left between the two shells; and to affix the whole apparatus to the handle bar. Conceding that the interior mechanism used in bicycle bells before Rockwell's device was unsatisfactory in one or other respect, it is difficult to see how there could be any invention in putting some other interior mechanism, well-known in the bellmaker's art, and, by reason of its compactness and continuity of sound, well adapted for such use, into the old, double-dish shell, affixed to the handle bar in the old way, and operated by thumb pressure on the old projecting thumb piece. No prototype of complainant's interior mechanism is shown in the prior art of this country. It is found, however, in a British patent, No. 2,425, of June 22, 1877, to Alfred Bennett, for "improvements in call bells, door bells, and other bells." The specification states that the—

"Invention consists of the construction and arrangement of the parts of the striking mechanism of call bells, door bells, and other bells, whereby a repeating action is obtained in the bell; that is, the bell is struck several times in succession when it is operated upon by the hand, or by a lever or other actuating mechanism."

The inventor first describes a call bell having a swiveled or jointed revolving hammer set in motion by a push rod:

"When the push rod is pressed down by the hand or finger, the pin or stud on it, by working in the helical slot in the hammer tube, gives rotation to the hammer tube, and the swiveled or jointed hammer on the said tube is thereby made to strike three or more times the lugs or projections on the inside of the bell; and, on the push rod making its return or upward motion by the action of its spring, the hammer tube is made to rotate in the opposite direction, and the hammer is again made to strike several times the lugs or projections on the inside of the bell. The repeating action of the bell is thus effected both on the advance or descending motion of the push rod, and on its return or ascending motion."

It is unnecessary to go into the details of structure of the Bennett call bell, except to say that its characteristic feature is a revoluble striker arm, with a swiveled head, which, being rotated in one direction by direct pressure of the hand, and in the opposite direction by a spring, makes several revolutions back and forth when pressure is applied, thus producing a continuous alarm. Having described his "call bell," Bennett proceeds:

"Fig. 7 represents in front elevation, and Fig. 8 in side elevation, partly in section, a door, house, or other like bell, to which repeating mechanism, constructed according to my invention, is applied. a is the bell supported on the pillar, b, in the usual way; c, c, are the lugs or projections on the bell for the jointed hammer, d, to strike against. The arm, e, to which the jointed hammer, g [manifestly a misprint for d], is connected, is fixed to the short tube or collar, f, capable of rotating freely on the bell pillar, b. This tube or collar, f, carries a pinion, g, which gears with the teeth of the semicircular wheel

or toothed sector, h.  By means of the said toothed wheel or sector, h, gearing with the pinion, g, a rotary motion may be given to the tube or collar, f, and to the jointed hammer, d, carried by it, and the said hammer, d, be made to strike several times in succession the lugs or projections, c, c, on the inside of the bell, a, as described with respect to the call bell.  The half toothed wheel or sector, h, is worked by the pulling of the wire attached to the arm, i, which wire may either be acted upon by a bell pull, or by the motion of a door.  The said arm, i, is jointed to the crank, k, on the axis of the half wheel or sector, h.  When several bells are arranged side by side, each bell may be provided with a pendulum, l, connected to the crank, k, for indicating which bell has been used.  The motions of the several parts of the bell are effected by the coiled spring, m, around the bell pillar, b.  One end of the coiled spring, m, is fixed to the rotating hammer arm, e, and the other end to the adjustable collar, n, fitted on a square or angular part of the pillar, b.  When the pinion and the collar, f, g, are rotated by the operation of the half wheel or sector, h, the spring, m, is coiled upon the pillar, b; and it is by the uncoiling of the spring, when the bell arm, i, has come to the end of its advance stroke, that the return motions of the jointed hammer, d, e, collar, f, pinion, g, wheel, h, and arm, i, are effected.  By changing the position of the collar, n, with respect to the square or angular part of the bell pillar, b, on which it is fixed, the coiled spring, m, may be tightened or coiled more or less on the said pillar, and any required amount of tension given to it.  The required power for working the bell may thus be adjusted with great nicety."

The drawings referred to are as follows:

Of the mechanism of this Bennett patent, it may be observed that it is not restricted to call bells, but, in modified form, is, as the inventor points out, applicable for "door bells and other bells  *  *  * operated upon by the hand, or by a lever or other actuating mechan-

ism." Once published to the world, it became a part of the bellmaker's art. Moreover, the description of the device and the drawings are fuller and more explicit than is frequently the case with British patents. There is no difficulty in understanding from the patent just what it was that Bennett devised, how it worked, and what its distinguishing characteristics were. The record does not show whether any bells made according to his patent came into use in England or elsewhere, but a model has been put in evidence, which, except for the pendulum (the use of which the patentee says is optional), is an exact reproduction of the drawings and description, with no modification of a single element, no readjustment of parts. This model may be put in operation by a pull upon the rod, i, but may be operated equally well by thumb pressure applied at the end of the crank or lever, to which the pendulum is attachable. When pressed by the thumb in one direction, the lever moves the toothed sector, h, which transmits motion through the pinion to the revoluble striker bar, causing it to make more than one complete revolution, the swiveled striker head sounding successive strokes on the gong; and when the thumb pressure is released the action of the spring drives the revoluble striker bar back for an equal distance, the swiveled striker head repeating its strokes. This is identically the combination of the second claim of the patent in suit. Referring, moreover, to the description of Rockwell's bell quoted supra from the brief of complainant's counsel, it will be seen that in Bennett's bell there is a lever of convenient form pivoted to the base plate, one end being available for the application of thumb pressure, and projecting beyond the circumference of the bell. The other end of the lever carries a segmental gear. One pinioned gear wheel which is found in Rockwell is wanting in Bennett; the segmented gear at the end of the lever meshing with a pinion upon one side of the striker bar, which is loosely pivoted on a stud or pillar. This striker bar carries a loosely-pivoted striker. A spring—attached to the lever in Rockwell's, and coiled around the stud in Bennett's— tends to keep the lever in one position, and to operate the striker bar in reverse direction to the direct action of the thumb-pressed lever. The insertion of an additional gear and pinion wheel in a train of such wheels arranged to transmit motion is certainly not invention; nor is it invention to substitute a reacting spring at one end of the train of motion for a similar spring at the other end. With these differences, the interior mechanism of Bennett is the same as that of Rockwell, and the earlier patent discloses all the elements of the second claim of the later one, viz.: (a) A base plate, (b) a revoluble striker bar, (c) spring-actuated in one direction, (d) a lever operatively connected therewith, (e) and adapted to rotate the striker bar in opposition to the force of the spring, (f) and a gong, substantially as set forth. Moreover, no particular rearrangement or reorganization is required to adapt the Bennett bell for use on a bicycle. Besides the projecting crank on which thumb pressure may be applied, a small part of the toothed segmental wheel projects beyond the periphery of the gong; but it is only necessary to enlarge the diameter of the gong, and to substitute the well-known dish-shaped base plate, with

its fastening appurtenances, in order to obtain a bell operated in the same way as complainant's, by means of the same mechanism, protected by a similar shell composed of gong and base plate, and affixable in like manner to the handle bar of a bicycle. We are unable, therefore, to find any patentable novelty in patent No. 471,982. The learned judge who tried the cause in the circuit court reached an opposite conclusion, mainly for the reason set forth in the following excerpt from his opinion:

"The great number of patents introduced into this case, all issued since the British patent, show the amount of inventive skill which has been brought to bear upon this class of inventions. If the changes necessary to adapt this [Bennett] bell to a bicycle bell were such as would occur to the ordinary mechanic, skilled in the art, it would seem as though it must have occurred to some one during the fourteen years of the life of said patent. A comparison of the bell [of the Rockwell patent] with [others] previously manufactured by defendant shows how crude and imperfect were the latest devices of the prior art, and furnishes additional evidence in support of the claim of patentable novelty. * * * The mass of evidence offered by defendant shows that the desired results have been accomplished, after repeated and futile attempts on the part of others, by a device which, upon defendant's own showing, is only anticipated by the earliest of all the devices,—the Bennett British patent of 1877 for a door bell."

For years prior to 1892 the demand for bicycles and bicycle bells was steadily increasing. To supply that demand, new improvements were being continually sought after. An alarm bell, which should be compact, simple, strong, durable, reliable, attractive, efficient, and easily operated, was a desideratum. One after another, the bellmakers of this country produced bicycle bells, differing in mechanism, some containing clockwork, some escapements and trembler hammers, but all, as the evidence shows, having one or other drawback,—a circumstance which continually stimulated mechanics and inventors to further effort to supply the want. If, during all this period, a bell-striking mechanism such as Bennett's was being turned out of the bell manufactories of Connecticut, as the operative part of call bells, door bells, and other bells, a court might find it extremely difficult to understand why it did not occur to any mechanic possessed of the ordinary skill of his calling to insert such mechanism in the double-dish shell of a bicycle, but would yet feel constrained by the argument that the reason so common a device was not put to a new use was because it required inventive genius to discover its adaptability thereto. This argument, however, is not applicable to the case at bar. There is no reason to suppose that Bennett or his bell was ever heard of by any bell manufacturer in this country until his patent was unearthed by a search for anticipating devices. The inability of the mere skilled mechanic to encase the Bennett mechanism in a bicycle bell shell, so as to produce a practicable bicycle alarm, is not to be taken for granted merely because it was not done, unless there is at least a reasonable probability that such mechanic knew of the Bennett mechanism. In this case the probabilities are all the other way. If Bennett's mechanism was used in the bellmaking industry here, it may safely be assumed that, in a record as carefully prepared as this, there would be some evidence of it. And so well adapted is that mechanism to bicycle bells that it is

almost inconceivable that it could have been known to bellmakers here during the 14 years in which they were trying to improve such bells, and yet was not availed of. No doubt, Rockwell devised the striking mechanism set out in his patent independently, and with no knowledge of what Bennett had done; and, since that mechanism was better adapted to meet the requirements of a bicycle bell than anything which rival manufacturers had succeeded in producing, it may be accepted as the fruit of an inventive conception, but its novelty is negatived by the British patent. The statutes authorize the granting of patents only for such inventions as have not been patented or described in any printed publication in this or any foreign country before the applicant's embodiment of his own conception. It may be a hardship to meritorious inventors, who, at the expenditure of much time and thought, have hit upon some ingenious combination of mechanical devices, which, for aught they know, is entirely novel, to find that, in some remote time and place, some one else, of whom they never heard, has published to the world, in a patent or a printed publication, a full description of the very combination over which they have been puzzling; but in such cases the act, none the less, refuses them a patent. The real invention here is the combination of a base plate with a revoluble striker bar, spring-actuated in one direction, a lever operatively connected therewith, and adapted to rotate the striker bar in opposition to the force of the spring, and a gong,—an ingenious mechanism, which, by reason of its simplicity and durability, its facility of operation, its reciprocating action, and the character of the alarm it sounds, is peculiarly fitted for a bicycle bell. But this precise mechanism was described and published to the world in the Bennett patent, and is used in complainant's bell with no other reorganization of operative parts than the insertion of an additional gear and pinion wheel, and such a shifting of the spring as introduces no new function. In our opinion, such unsubstantial changes do not involve invention. Nor is it invention to inclose the operative mechanism in an old bicycle, double-dish shell, when used for a bicycle bell, instead of mounting it upon a standard, for a call bell; affixing it to a door jamb, for a door bell; or arranging it to engage with an opening window sash, for a burglar alarm. The decree of the circuit court is reversed, and the cause remitted to that court, with instructions to dismiss the bill, with costs of both courts.