## PENNINGTON et al. v. NATIONAL SUPPLY CO.

### No. 8540.

Circuit Court of Appeals, Fifth Circuit.

March 8, 1938.

Jesse R. Stone, of Houston, Tex., for appellants.

Leonard S. Lyon and Lewis E. Lyon, both of Los Angeles, Cal., and J. Vincent Martin, of Houston, Tex., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

Appellants filed this suit in the District Court seeking an injunction and an accounting against appellee for alleged infringement of patent No. 1,822,710, issued to Harry Pennington on a rotary drilling rig for oil and other deep well drilling. The other appellant, American Well & Prospecting Company, is the sole licensee. The bill was dismissed after a trial on the merits.

The bill alleged the issuance of the patent to Pennington on September 8, 1931, pursuant to his application therefor filed in the Patent Office on December 8, 1925, and the license agreement with the American Well & Prospecting Company under date of November 27, 1928. It further alleged the infringement of the patent by various machines manufactured, sold, and used by appellee, and consequent loss to appellants.

The answer denied the allegations of invention and infringement contained in the bill, and alleged that the claims contained in the patent were anticipated by some 55 prior patents and by various printed publications; that the alleged invention had been in public use and on sale by various parties other than Pennington for more than two years prior to the date of his application; that the alleged invention had been abandoned; that the patent was void in that Pennington unjustly obtained the same upon matters which were the inventions of others; that the claims of the patent were too restricted to cover appellee's device; that the prior art was such that the alleged invention amounted to a mere application of mechanical skill; and that Pennington did not come into court with clean hands, in that, subsequent to the filing of his application, the same was amended and broadened to include matter not embraced within the original application and which was not the invention of Pennington, and on which he was not entitled to a patent.

The basic machine, a rotary drilling device for drilling oil and other deep wells, was old in the art of deep well drilling before Pennington became employed in this field. Such machines consist in a base or frame upon which a circular table is mounted to rotate horizontally. The rotating table moves on bearings between it and the base, and is propelled by power from an outside source communicated to it through a horizontal shaft mounted in the base with a gear which meshes with another fixed to the table. It is provided through an opening in the center with means of gripping the pipe or drill stem to be passed through the same, and to which its rotary motion is thereby transmitted.

The operation of these machines was attended with difficulty because of dirt and grit, always present while the work was in progress, being deposited on the gears and bearings, which nullified the effect of lubrication and caused wear and friction to such an extent that the life of the machine was very short and its operation unreliable. In the year 1918, the Texas Company, in its production department, began the development of an improved drilling machine which was built and put in operation before the end of that year.

The important features of the Texas machine were that the drive was through a bevel pinion on the drive shaft and ring gear on the rotating table, so constructed and positioned as to lubricate themselves from a quantity of oil contained in the base of the machine and maintained at a level at which the teeth of the pinion would dip at each revolution, the pinion and gear being inclosed in a dirt-proof housing made up of the base and table together with overlapping rings protruding therefrom, and a main bearing, upon which the table rotated, made up of three friction rings, one attached to the table, one attached to the base, and one between these two which was allowed to run free, this bearing being also inclosed and protected from grit and dirt but being lubricated through openings in the top of the table into which a small quantity of lubricant was introduced at frequent intervals. The operation of the machine was successful to the extent that the Texas Company used it to drill at least three wells from 1919 to 1922. Thereafter, it was decommissioned, and Pennington bought it to remodel and use in his own operations.

Giving him credit for all the changes made in the Texas machine, either by himself or the mechanics employed by him to make or assist in making the changes and repairs, Pennington made the improvements thereon which enabled him to use it in drilling a number of wells. The first step was to replace the friction rings in the bearing between the base and the rotating table with a frictionless cone type taper roller bearing. The frictionless bearing being thicker than the friction rings, the table was raised with reference to the base and correspondingly with reference to the drive shaft mounted thereon, with the result that the drive pinion did not mesh with the ring gear. This required that the bearing in which the drive shaft rotated be raised sufficiently to compensate for the difference in thickness of the friction rings and the roller bearing with cones. To accomplish this, shims, or small strips of metal, were inserted under the supporting edges of the drive shaft bearing to bring the pinion into proper mesh with the ring gear and to bring the shaft into proper alignment. This in turn left an opening under the bearing through which oil placed in the base would flow out before attaining sufficient height to lubricate the pinion. A small plate was fashioned to fit around the drive shaft and close the opening under the bearing whereby a sufficient quantity of lubricant could be retained to supply the pinion and ring gear.

It should be noted that, in raising the drive shaft bearing and in closing the opening thereunder, the capacity of the oil-containing recess was materially increased. Another result of inserting the thicker roller bearing in place of the friction bearing was to raise the under surface of the rotating table so that there was an opening between it and the rim which separated the recess containing the roller bearing from that in which the ring gear rotated. As a result, the oil spray caused by the clash of the teeth of the pinion with the teeth of the ring gear flowed over this rim and lubricated the roller bearing, dispensing with the necessity of openings in the top of the table for this purpose. The only parts of the Texas machine not used by Pennington were the friction rings replaced with the roller bearing. The only parts added were the roller bearing, the shims under the drive shaft bearing, and the oil-retaining plate placed outside the drive shaft bearing and adjacent to the drive shaft.

Pennington used the machine thus reconstructed, and on December 8, 1925, filed his application for a patent, the plans and specifications accompanying the same being the same as those of the Texas machine as modified by Pennington, except for certain mechanical equivalents, and that the drawings and description show an original construction instead of a modification and adaptation. This application followed the usual course in the Patent Office until an interference was declared on the prior applications of Hild and Zilen. In the interference proceeding Pennington claimed to have developed the ideas embodied in his machine as early as 1918, and produced a complete set of drawings made in 1923, and one of a series of drawings which he claimed to have made in 1918. No other witness was able to identify the drawing of 1918, or to give any particulars concerning the same. Pennington's claims of priority over Hild and Zilen were denied by the Commissioner but allowed on appeal, and the patent in suit was issued September 8, 1931.

While the claims alleged to have been infringed by appellee herein are numerous, they may be roughly grouped and

described as follows: Inclosure of the bearing and friction surfaces to exclude foreign matter therefrom; a splash system of lubrication by oil picked up from a recess within the machine and sprayed to other parts, referred to by appellant as "oil bath lubrication"; unitary construction of the base to provide constant alignment of drive shaft and pinion with the ring gear and rotary table; and a unitary drive shaft and pinion assembly likewise designed to maintain constant alignment. As to the last two features, the District Court properly held that Pennington could not claim invention thereon because they were anticipated by the prior art. Moreover, we think they involved principles so old and well known in the construction of machines as to reduce to a mere matter of mechanical skill the question of whether or not they should be applied to any machine.

The District Court further held that the claims embodying the inclosure of the surfaces subject to friction and the system of lubrication were anticipated by prior patents and publications and by the prior use of the Texas machine.

Appellant insists that the court erred in considering the prior use of the Texas machine, because that machine was abandoned by the Texas Company and was not successful until modified and rebuilt. As to this, it does not appear that the Texas machine was a failure, since it drilled three wells for the Texas Company, which was more than was usually accomplished by the rotary drilling machines then in use.

An unsuccessful experiment which is later abandoned does not negative novelty in a new and successful device, T. H. Symington Co. v. National Malleable Castings Co., 250 U.S. 383, 386, 39 S.Ct. 542, 63 L.Ed. 1045; Clark Thread Co. v. Willimantic Linen Co., 140 U.S. 481, 489, 11 S.Ct. 846, 35 L.Ed. 521. Nevertheless, the existence and operation of a machine, abandoned after its completion and sufficient use to demonstrate its practicability, is evidence that the same ideas incorporated in a later development along the same line do not amount to invention. Corona Cord Tire Co. v. Dovan Chemical Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Jones v. Sykes Metal Lath & Roofing Co., 6 Cir., 254 F. 91. If the prior machine does not anticipate, it would not have done so if it had been neither unsuc-

cessful nor abandoned. Novelty is ascribed to new things, without regard to the successful and continued use of old things. Correlatively, it is denied to old things, without regard to the circumstances which caused their earlier applications to be unsatisfactory or their use to be abandoned. Cf. Pickering v. McCullough, 104 U.S. 310, 26 L.Ed. 749; Merrimac Mattress Mfg. Co. v. Feldman, C.C., 133 F. 64; Van Epps v. United Box Board & Paper Co., 2 Cir., 143 F. 869.

The importance of the Texas machine in this case is in determining whether or not Pennington is the inventor of the features covered by his numerous claims based on the structure of that machine as modified. The earliest drawing claimed by Pennington bore date November 2, 1918. Drawings by the Texas Company are shown to have been made as early as April 22, 1918. In the interference proceeding in the Patent Office, Pennington relied upon the prior use of the Texas machine by the Texas Company, but did not disclose that, as used, it was developed by the Texas Company. These facts were fully developed in the District Court. Moreover, it was shown that the drawings submitted by Pennington in the interference proceeding as having been made by him in 1923 were actually traced from the earlier Texas Company drawings. This fact was reluctantly admitted by Pennington on cross-examination when it was demonstrated that the drawings had identical features and that, while Pennington had intended to disclose a slightly different structure, he failed to observe the legend, and, as a result, his drawing, or tracing, disclosed inconsistencies which were explainable only by reference to the Texas drawings. That these facts may have constituted a fraud upon the Patent Office, we need not consider here. They demonstrate that Pennington cannot claim any feature embodied in the Texas machine for the simple reason that he did not invent it, that it was invented by others, and that he undertook, and is undertaking, to appropriate to himself an invention which he did not make.

It has already been noted that the Texas machine was fully inclosed, the parts subject to friction being protected from foreign matter. When antifriction bearings were first invented, their application to a particular machine may have involved invention. However, their development has reached the point where their applica-

tion, design, and structure are matters to be determined by calculation on the basis of known factors revealed by the machine and the use to which it is to be put. This is demonstrated by publications of the Timken Engineering Laboratories and others incorporated in this record. Likewise, the size and location of a receptacle for a free running lubricant is a matter involving mechanical skill at most, and invention could not reside in the increase in capacity or change in location, where the system of lubrication remains essentially the same as in Pennington's modification of the Texas machine. Dunbar v. Meyers, 94 U.S. 187, 192, 24 L.Ed. 34, 39; Smith v. Nichols, 21 Wall. 112, 22 L.Ed. 566.

■ There remains only the feature of lubricating the supporting frictionless bearing from the spray produced by the clash of the pinion gear teeth with those of the ring gear. We may disregard the apparent accidental incorporation of the features which produced this result. At the time Pennington claims to have conceived his patent, the use of splash lubrication systems had become so common as to remove them from the field of invention. The question of the propriety of their use depends upon whether or not the parts to be lubricated are sufficiently inclosed, produce sufficient splash, or spray, of lubricant, and are capable of being sufficiently protected by a freely running lubricant of the same consistency for the various surfaces to be protected. Rather than showing invention in this respect, Pennington's change in the Texas machine indicates that he did not undertake to evaluate the factors with the information known to the art. Even if Pennington had no notice of the prior art of splash lubrication, he could not overcome the negation of novelty resulting therefrom. Derby v. Thompson, 146 U.S. 476, 13 S.Ct. 181, 36 L.Ed. 1051; New Departure Bell Co. v. Bevin Bros. Mfg. Co., 2 Cir., 73 F. 469.

■ But appellants insist that the Pennington patent should be upheld as a last-step development which turned an unsuccessful experiment into a successful machine. They cite and rely upon the Barbed Wire Patent Case, 143 U.S. 275, 12 S.Ct. 443, 447, 450, 36 L.Ed. 154, along with other cases. In that case, it was stated that "it may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence

of invention." If it be conceded that the Texas machine was not successful, which is not shown, the question remains, what changes made by Pennington made it successful, and did these changes amount to invention? The only defect in the Texas machine disclosed by the record was the wear on the friction rings in the bearing upon which the table revolved. It may reasonably be supposed that the Texas Company engineers chose friction rings instead of a frictionless bearing because of the great difference in cost, preferring to renew them from time to time as the experiment progressed, and that the substitution of a frictionless bearing was obvious. At most, the substitution of rollers for a sliding surface, since the development and knowledge obtained concerning roller bearings, was a mere substitution of mechanical equivalents. Cf. Yancey v. Enright, 5 Cir., 230 F. 641.

■ In evaluating Pennington's claims of invention, we must deny those based upon the application of an old device to a new purpose (MacDougald Construction Co. v. Finley, 5 Cir., 38 F.2d 809); those based upon a mere aggregation where the assembled units merely perform their usual function (Grinnell Washing Machine Co. v. E. E. Johnson Co., 247 U.S. 426, 38 S.Ct. 547, 62 L.Ed. 1196); those based on the substitution of mechanical equivalents; and those based on the application of the prior art and mechanical skill. The additions to the machine with which he began must amount to more than any one or combination of these things.

■ Applying the rule announced in the Barbed Wire Patent Case, supra, the modification of the Texas machine, accomplished in the changes therein by Pennington, does not furnish sufficient evidence of invention to sustain a patent. It teaches nothing new. It does not advance the arts and sciences intended to be promoted by the granting of patent monopolies. The case is adequately covered by the statement of principles made by Mr. Justice Bradley in Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 231, 27 L.Ed. 438, which is as follows: "The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary head-workmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous

trials and attempts in a hundred different places. To grant to a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences. The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the art. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

The District Court did not commit error in dismissing the bill. Therefore its decree is affirmed.