**BALDWIN–LIMA–HAMILTON CORPORATION, a corporation, Plaintiff,**

v.

**HI–WAY EQUIPMENT COMPANY, Inc., a corporation, Defendant.**

**Civ. A. No. 14255.**

United States District Court
S. D. Texas,
Houston Division.

Oct. 11, 1965.

As amended March 21, 1966.

Baker, Botts, Shepherd & Coates, Robert A. White, Houston, Tex., for plaintiff.

Arnold & Roylance, Tom Arnold, Houston, Tex., and Edward Haight, Chicago, Ill., for defendant.

NOEL, District Judge.

The above entitled and numbered cause having been tried before the Court without a jury, at the close of the evidence and after hearing arguments of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. This is a patent infringement action brought by Baldwin-Lima-Hamilton Corporation, a corporation of Pennsylvania, against Hi-Way Equipment Company, Inc., a corporation of Texas, and the Pettibone Mulliken Corporation, a corporation of Delaware, charging infringement of U. S. Letters Patent No's. 2,462,926 and 2,787,383. This Court has jurisdiction of the subject matter and of the parties with the exception of Pettibone Mulliken Corporation.

2. U. S. Letters Patent No. 2,462,926 (Wilson et al. or "Wilson") was granted

on March 1, 1949 on an application filed March 27, 1944, and U. S. Letters Patent No. 2,787,383 (Antos et al. or "Antos") was granted on April 2, 1957 on an application filed March 13, 1951.

3. The plaintiff is the owner of U. S. Letters Patent No's. 2,462,926 and 2,787,-383.

4. The plaintiff is Baldwin-Lima-Hamilton Corporation, a corporation of Pennsylvania, which has a Construction Equipment Division, the Austin-Western Works of which are located at Aurora, Illinois.

5. The defendant, Hi-Way Equipment Company, Inc., is a corporation of Texas having its principal place of business at Houston, Texas. Hi-Way Equipment Company, Inc. does not itself manufacture cranes within this district or elsewhere but is a distributor for Pettibone Mulliken Corporation.

6. Pettibone Mulliken Corporation is a corporation of Delaware having a headquarters at Chicago, Illinois, and a crane manufacturing facility at Rome, New York. Pettibone Mulliken Corporation is not subject to service of process in this judicial district.

7. Pettibone-Mulliken Corporation is directing the defense of this action and has assumed the expenses incident thereto except such expenses as may be absorbed on local matters by the defendant, Hi-Way Equipment Company, Inc.

8. The purported disclosure of the said Wilson patent is of a crane of a type known as the "Anteater" manufactured during World War II for the U. S. Government by plaintiff's predecessor, Austin-Western Company, as an outgrowth of the Government's desire to have a second source of supply for cranes being manufactured by the Trackson Company of Milwaukee, Wisconsin. Austin-Western Company representatives viewed the Trackson crane in Milwaukee.

9. The Trackson crane, shown in the Ehrdahl patent, was a crane having a boom which could swing around a vertical axis at a midpoint on a tractor-type vehicle, the boom being capable of being raised or lowered.

10. Austin-Western Company had previously had considerable experience in applying hydraulic power to other material-moving devices; for example, road graders. Austin-Western Company advised the Government that it could tool up more rapidly if it could build one of its own design rather than make an exact copy of the Trackson crane. Under contract with the Government, Austin-Western Company produced 440 hydraulic cranes.

11. Subsequent to World War II, Austin-Western Company distributed a brochure (printed twice, about 3,000 each time) offering cranes substantially identical to those "Ant-eater" cranes manufactured for the Government, and an improved version on wheels, but secured no orders for either and despite the fact that Austin-Western Company was all tooled up for the "Anteater" cranes and sold older cranes, manufactured none of the "Anteaters."

12. The purported disclosure of the said Antos patent is of a crane initially produced for the United States Government by plaintiff's predecessor, Austin-Western Company, under contract designated as Contract W–44–009–eng–742. Said contract has an effective date of May 25, 1949. (See plaintiff's Exhibit 2 and defendant's Exhibits 88 and 89.) Five experimental cranes were produced under this contract, four being for the Government and one which Austin-Western Company built for itself.

13. Billings, the patentee of Patents 2,365,167 and '168, must be recognized as preceding plaintiff in establishing the branch of the crane art meeting the definition: Mobile cranes having a full set of crane functions actuated hydraulically; these functions including extension and retraction of a telescopic boom, as well as the more common crane functions of swinging the boom horizontally, swinging it vertically and powering a hoist line which hangs from the tip of the boom. The Antos patent also relates to this branch of the crane industry, but it

was not filed until several years after the Billings was well established commercially under his issued patents. Billings applied for these patents respectively on September 2, 1942 and July 12, 1943. As a drawing of the Wilson patent shows a date of February 5, 1943, only the Billings '167 is prior art as to Wilson.

14. Billings established the defined art in 1942 and 1943. The Billings '167 patent did not use hydraulic power for its boom rotation, but this was supplied by the '168 Billings patent and incorporated in all Billings cranes. In any event, I find the extension of the hydraulic concept to this one additional function to be obvious to a person skilled in the art.

15. Billings '167 provided a telescopic boom hydraulically extended and retracted by a hydraulic cylinder, another hydraulic cylinder which, as an improvement over the usual or conventional drum or winch (p. 3, 1.37L), operated a block and tackle arrangement for drawing in and paying out the hoist line; and a third hydraulic cylinder for raising and lowering the boom. For each cylinder there was a separate control lever for operation in both directions by valve control. The entire crane structure thus described was carried by a truck, mounted on a turntable which had unlimited rotation and was powered by a gasoline engine. The second Billings patent used hydraulics for swinging the boom laterally, and still had "full-circle" swinging.

16. Billings built a prototype known as "old Faithful" which closely resembled the '167 patent except that as shown in his '168 patent a pair of hydraulic cylinders was substituted for the engine for rotating the turntable with full circle rotation ('168 patent p. 2, 1.76R). Billings received some orders from the Government during the war, exhibited his crane at a 1945 industry show, and promptly after the war went into production with the H–2 crane. This crane was well received, was named the "HYDROCRANE," and was extensively manufactured by the Milwaukee Hydraulics

Company, a company organized by Billings and others who were attracted by the features of the crane. A later model, the H–3, was produced in early 1948 and on May 1, 1948, the business acquired by Bucyrus-Erie Corporation after a favorable report on the Hydrocrane by the Bucyrus-Erie Chief Engineer (see defendant's Exhibit 188A). The H–3 was exhibited at an industry show in June or July, 1948 and many orders taken. The business still flourishes, a recent model being the H–5. All of the Hydrocranes have essentially followed the prototype and the patent, although those after the prototype followed British patent 391,777 (1933) in regard to two obvious variations: (1) locating the boom-raising cylinder under the boom, and (2) providing a double-acting cylinder for the boom extension. "Old Faithful" and the Billings patent used only a single-acting cylinder, with hydraulic power for extending the boom, the retraction being hydraulically controlled by letting oil out of the cylinder, the retraction force being that of gravity or hoist line tension.

17. As compared to the Hydrocrane of the Billings patents, Wilson was both a retrogression and an advance in the art. Four Wilson deficiencies, all avoided by plaintiff in the later Antos cranes, were:

(a) Lack of a powered hoist line;

(b) A unitarily shifting boom instead of having a telescopic boom as in Billings. When retracted, this boom projected to the rear and the rotation of the boom then constituted an objectionable tailswing which nullified some of the reach by keeping the crane from working close to the load;

(c) A chain, and two-cylinder hydraulic engine, for boom extension and retraction. These gave trouble, and were abandoned by plaintiff in the Antos patent (see plaintiff's Exhibit 2);

(d) A two-cylinder hydraulic engine for crane rotation. Although this was used in the first Antos cranes, it gave trouble and was soon abandoned (see defendant's Exhibits 196A and 196B).

18. Wilson's "plus values" over the Billings '167 patent were:

(a) Powering the boom movement both ways. The use of a double-acting boom extension cylinder would be obvious, however, in view of the British patent, 391,777; Billings, after his first two cranes, Antos and PMCO all use a double-acting boom extension cylinder made obvious by the British patent, 391,777;

(b) Using a hydraulic engine instead of a gasoline engine for rotating the boom;

(c) Control of crane functions from the main frame. This, however, would be obvious in view of the Trackson crane and the teachings of Manley 3,-075,819 and Ehrdahl 2,381,731 (see defendant's Exhibit 1).

19. There was nothing unobvious in Wilson claims 3 and 4.

20. Claim 5 of the Antos et al. patent is the only independent claim in suit. It would appear that in this claim the first three of the backward steps from Billings to Wilson et al. have been retraced.

21. The Hydrocrane had a telescopic boom, of rectangular tubular shape, with a double-acting hydraulic cylinder within it for extending and contracting the boom. Substituting this assembly for the corresponding structure in the "Anteater" would get rid of the bad rearward thrust of the "Anteater" boom which gave it an objectionable tailswing. The Hydrocrane had a powered hoist line. I therefore find it obvious to power the winch in the Antos et al. patent. Claim 5 teaches only the obvious.

22. Claim 5 of the Antos et al. patent is a claim which congregates as an alleged combination, a plurality of elements or assemblies having no novel relationship between the various assemblies. As a combination, it was old and exhausted. Aside from improvements within its major elements (the boom assembly and the pedestal assembly) and not producing any new coaction between the major elements, the "combination" was old in the Billings patent (see defendant's Exhibit 1) and in the Hydrocrane (see defendant's Exhibit 111); it was old in the "Anteater" and it was old in every prior swinging crane. If there was any invention in the boom construction, such as might be defined by the claims of the patent not asserted in this suit, such invention did not cause any different coaction between the boom and the pedestal, and certainly not between the pedestal and the supporting frame, or between any of these and the boom-lift cylinder. Because claim 5 includes all of these elements not newly coacting, it defines an exhausted combination.

23. Claims 6, 7, 9 and 10 each adds only details pertinent only to elements or sub-portions of the exhausted combination of claim 5. No such incremental detail induces any different coaction between the major areas of the "combination." These claims cannot cure the defect of claim 5, which they incorporate, as to defining exhausted combinations.

24. Plaintiff's commercial success is not attributable to the Wilson patent. As found above, plaintiff had no commercial success in marketing the machine of the Wilson patent. After a lapse of years plaintiff had commercial success with its later cranes, but I find this success unrelated to any claim of the Antos et al. patent. The Antos et al. patent illustrates only a truck-mounted crane, and the Antos claims are as consistent with truck-mounted cranes as with self-propelled cranes. The popularity of the self-propelled crane, therefore, cannot be attributed to the claims of the Antos patent.

25. During the latter part of 1959, Pettibone-Mulliken Corporation undertook the design of a full circle hydraulic boom crane, a project which culminated in the "Multicrane" units, the product line which is accused of infringing plaintiff's patents. Incident to this program, Pettibone-Mulliken Corporation purchased an Austin-Western crane, No. G-1671, which crane embodied the purported inventions of the patents in suit. The original prototype Multicrane ap-

parently was identical in material respect to the Austin-Western cranes exemplified by No. G–1671, but the commercial cranes differ in one important respect— the use of a single-acting hydraulic cylinder to rotate the boom through its vertical arc in the accused cranes in place of the double-acting hydraulic cylinder used for this purpose in the Austin-Western cranes.

26. Defendant has used, sold, and/or offered for sale Multikranes identified as the Model 15, Model 25, a truck-mounted crane, and other similar units, to all of which the following findings and conclusions relative to the issue of infringement are applicable, except for the limited applicability of Findings 33 and 34 expressed therein. The term "Multikrane" as used herein includes all such devices.

27. Claims 3 and 4 of the Wilson patent are limited to a unitary shifting boom. The accused structures use a telescopic boom as defined in the British patent 391,777, and therefore do not infringe.

28. The file history establishes that the Wilson claims 3 and 4 were limited to a unitarily shifting boom. During the prosecution of the patent, the patentee argued with respect to claims 3 and 4 that his shifting unitary boom was different from the telescopic boom of the prior art (see defendant's Exhibit 2, page 81), and some claims not limited to the shifting boom on a boom support were cancelled (e. g. claim 25, page 37).

29. Both of the asserted Wilson, et al. claims, 3 and 4, also require upper and lower bearings for the turntable. This represents a distinction over the more conventional turntable bearing arrangement all substantially at one level, and has been described by plaintiff's Manager of Engineering as having the advantages of providing suitable stability with lower bearing pressure and a smaller diameter of bearing, and being less subject to looseness at the end of the boom when the bearings wear. All of the accused structures have a single-level bearing for the turntable and for this additional reason they do not infringe. The one-level bearings are not equivalent in view of lacking the advantages asserted for the Wilson bearings now, and which were considered significant in taking out the Wilson patent. Wilson is not a pioneer patent; therefore, equivalency outside of its clear limitations is not to be considered. There is no meaning to be given to the limitation "upper and lower" bearings which would find satisfaction in the accused structure.

30. The prior art Hydrocrane used only a single-acting cylinder for raising and lowering the boom. The Antos et al. crane used a double-acting cylinder at this place. Claim 5 of the Antos et al. patent expressly defines the boom-raising cylinder as a "double-acting hydraulic cylinder" (see plaintiff's Exhibit 1, Col. 10, line 16). The term "double-acting" can have no significance except to distinguish from the single-acting cylinders such as that of the Hydrocrane. Since all single-acting boom-lift cylinders raise the boom with power and lower it by hydraulic control, the term "double-acting" would add nothing if it meant only that. Furthermore, the Patent Office allowed claim 5 (then claim 38) immediately after the patentee argued as to this claim the distinction of double-acting cylinders over single-acting cylinders (see defendant's Exhibit 3, p. 139).

31. Plaintiff's Managing Engineer has testified that double-acting boom-lift cylinders have important advantages over single-acting cylinders. All of the accused cranes, with the single exception of the very first crane sold, discussed separately below, include boom-lift cylinders which are single-acting in all respects. Like the prior art Hydrocrane, they also *let* the boom down and do not push it down, and lack the advantages of double-acting cylinders. Accordingly, these later accused machines do not infringe claim 5.

32. Antos claims 6, 7, 9 and 10, which are also asserted in this suit, all include claim 5 by reference and therefore also include the limitation to the double-acting

boom-lift cylinder, and are therefore not infringed by the later machines.

33. The first crane sold by defendant (Ser. No. 26–2–55) was different. Its boom-lift cylinders, considered as a structural element, were single-acting cylinders in that the piston in each had but a single cup, this cup facing downwardly (see defendant's Exhibit 201–A). The hydraulic circuit to these cylinders was, however, capable of applying oil under pressure to the space in each cylinder above the piston. This one crane was changed in the field, a few weeks after it was delivered, to remove the valved connecting line which had extended to the upper end of the cylinder and connect the upper end of these boom-lift cylinders directly with the oil tank, through a drain line, so that oil could no longer be delivered above the piston under pressure.

34. If the hydraulic circuit of the Ser. No. 26–2–55 as delivered be considered double-acting, it is not the same type of circuit as that of the patent. In this one crane, the oil under pressure did not (as in the patent) go directly from the manual valve to the upper ends of the lift cylinders, but instead went to an intermediate "pilot actuated" valve where its primary purpose was to open the return line from the bottoms of the boom-lift cylinders so as to let the cylinder down by allowing the weight of the boom and its load to force the oil out from the bottoms of the cylinder. It is not clear that the purpose of the patent was significantly present even in the few weeks before the change. In view of the change in the field there is no reason to assume that the double-acting hydraulic circuit, if it should be called that, was a significant factor in the sale of the crane by defendant. If there was infringement, it was *de minimus*.

35. In view of Conclusion of Law No. 13, post, no finding is made with reference to the defense of unclean hands.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the plaintiff, Baldwin-Lima-Hamilton Corporation; the defendant, Hi-Way Equipment Company; and over the subject matter of this suit.

2. The patentee is chargeable with knowledge of everything that preceded him, even though he may in fact have been ignorant of the prior art; and, if the patentee is merely the first to utilize the existing fund of public knowledge for new and obvious purposes, the patent is invalid. Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 20 S.Ct. 708, 44 L.Ed. 856 (1900); Duer v. Corbin Cabinet Lock Co., 149 U.S. 216, 13 S.Ct. 850, 37 L.Ed. 707 (1893).; Vincent v. Suni-Citrus Products Co., 215 F.2d 305 (5th Cir. 1954); Pennington v. National Supply Co., 95 F.2d 291 (5th Cir. 1938).

3. Patent claims drawn to a combination of old elements should be scrutinized with the care proportioned to the improbability of finding invention in such an assembly. Great A & P Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Robinson v. Digaetano, 212 F.2d 1 (5th Cir. 1954); Murray Co. of Texas, Inc. v. Continental Gin Co., 264 F.2d 65 (5th Cir. 1959); Glikin v. Smith, 269 F.2d 641 (5th Cir. 1959).

4. The alleged invention of the Wilson et al. Patent No. 2,462,926 and that of the Antos et al. Patent No. 2,787,-383 are invalid in that the differences between the subject matter sought to be patented by each and the prior art applicable to each are such that the subject matter of each as a whole would have been obvious at the time the alleged invention of each was made to a person of ordinary skill in the art. 35 U.S.C. § 103; Fritz W. Glitsch & Sons v. Wyatt Metal & Boiler Works, 224 F.2d 331 (5th Cir. 1955); Little Mule Corp. v. Lug All Co., 254 F.2d 268 (5th Cir. 1955).

5. The mere aggregation of a number of old elements which, in the aggregation, perform or produce no new or different function or operation than that performed or produced by them, is not patentable invention. And the improvement of one part of an old combina-

tion gives no right to claim that improvement in combination with other old parts which perform no new function in the combination. Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 54, 58 S.Ct. 662, 82 L.Ed. 1008 (1937); Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Murray Company of Texas v. Continental Gin Co., 264 F.2d 65 (5th Cir. 1959).

6. Each of the claims in suit of patents No. 2,462,926 to Wilson et al. and No. 2,787,383 to Antos et al. are invalid as drawn to a mere aggregation of old elements (authorities cited at Conclusion of Law No. 5).

7. A patent claim cannot, like "a nose of wax" be twisted one way to avoid anticipation and another way to find infringement. White v. Dunbar, 119 U.S. 47, 7 S.Ct. 72, 30 L.Ed. 303 (1886); Permo, Inc. v. Hudson-Ross, Inc., 179 F.2d 386 (7th Cir. 1950).

8. Each of claims 3 and 4 of the Wilson et al. Patent No. 2,462,926 is invalid if broadly construed for anticipation of the prior art patents to Primrose et al. No. 1,315,684 and to Billings No. 2,365,-167. Each of claims 5, 6, 7, 9 and 10 of the Antos et al. Patent No. 2,787,383 is invalid if broadly construed for anticipation by prior art patents to Wilson et al. No. 2,462,926 and by the prior public use of the Models H–2 and H–3 Hydrocranes and the prior art publication of the Bucyrus-Erie Hydrocrane Model H–3, published in 1948. Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 27 L.Ed. 438 (1882); Pennington v. National Supply Co., 95 F.2d 291 (5th Cir. 1938).

9. A combination claim is not infringed unless the accused structure contains all the elements of the combination described in the claim, and one claiming under the patent is bound by the restrictive or limiting language used by the patentee in describing an element of the patented combination. Aleograph Co. v. Electrical Research Products, Inc., 55 F.2d 106 (5th Cir. 1932).

10. When a patentee adopts during the Patent Office proceedings on his patent a definition of an element of his claim to avoid a prior art reference cited in the prior art, his claim is limited to the element as so defined and the equivalents thereof are inescapably narrowed. Hughes Tool Co. v. Varel Manufacturing Co., 336 F.2d 61 (5th Cir. 1964).

11. Plaintiff is estopped to assert that a telescopic boom is the equivalent of the element "boom" in claims 3 and 4 of the Wilson et al. Patent No. 2,462,-926 or that a single-acting hydraulic cylinder is the equivalent of the elements calling for "double-acting" cylinder of claims 5, 6, 7, 9 and 10 of the Antos et al. Patent No. 2,787,383. Hughes Tool Co. v. Varel Manufacturing Co., 336 F.2d 61 (5th Cir. 1964).

12. No one of the accused cranes in suit infringe any of claims 3 and 4 of the Wilson et al. Patent No. 2,-462,926 or claims 5, 6, 7, 9 and 10 of the Antos et al. Patent No. 2,787,383. Aleograph Co. v. Electrical Research Products, Inc., 55 F.2d 106 (5th Cir. 1932); Hughes Tool Co. v. Varel Manufacturing Co., 336 F.2d 61 (5th Cir. 1964); Houston Engineers, Inc. v. Bowen-Itco, Inc., 310 F.2d 522 (5th Cir. 1962).

13. Pursuant to the provisions of Rule 42(b), Fed.Rules Civil Proced., the defense of unclean hands as specified in paragraph 5(c) of the Pre-Trial Order of October 6, 1964 and in paragraph 10 of defendant's Answer is hereby severed. If this issue should become material to the ultimate disposition of the case, a setting will then be made for a separate trial.

14. I find no reason to question the good faith of the plaintiff in bringing this suit. Consequently, this Court will not exercise its discretionary powers to award either costs or attorneys' fees to defendant. Each party shall bear its own expenses. See: Swofford v. B & W, Inc., 34 F.R.D. 15 (D.C. Tex.1963); Hanks v. Ross, 200 F.Supp. 605 (D.Md.1961).

The foregoing shall constitute the Findings of Fact and Conclusions of Law of this Court under Rule 52(a), Fed. Rules Civil Proced. These findings supercede my remarks of November 13, 1964, and any inconsistency which might be found to exist between them is to be resolved in favor of these findings.