BOWEN–ITCO, INC., and Lynn W. Storm, Plaintiffs,

v.

HOUSTON ENGINEERS, INC., Defendant.

No. 10739.

United States District Court
S. D. Texas,
Houston Division.

March 15, 1961.

---

Earl Babcock, Duncan, Okl., and B. R. Pravel, Houston, Tex., for plaintiffs.

Browning, Simms, Hyer & Eickenroht, and James B. Simms, Houston, Tex., for defendant.

INGRAHAM, District Judge.

This is a patent infringement suit. The plaintiffs are Bowen-Itco, Inc., a Texas corporation (hereinafter called Bowen), and Lynn W. Storm (hereinafter called Storm), and the defendant is Houston Engineers, Inc., a corporation

of Texas (hereinafter called Houston Engineers).

The patent in suit bears the number Re. 23,354 and the date of April 10, 1951. It is a reissue of original patent 2,499,-695 granted to Storm March 7, 1950, on his application filed March 18, 1947. Plaintiffs charge that claim 6 of the reissue patent 23,354 is infringed.

Storm is the owner of the patent in suit, and has granted Bowen an exclusive license under it. Hence, Storm and Bowen are both proper parties plaintiff in this suit.

In its answer, Houston Engineers denies that the Storm reissue patent in suit is valid, and it denies that it has infringed the patent in suit. Defendant also counterclaims for declaratory judgment that the patent in suit is invalid and not infringed.

The Storm reissue patent in suit relates to what is known as a hydraulic jar for use with "fishing tools" in oil wells. When an object becomes stuck in a well, fishing tools are run into the well on pipe and latched onto the stuck object or "fish", and an attempt is then made to pull it loose. If a straight pull will not loosen it, an attempt is made to strike the fish a heavy blow, usually upwardly, to jar it loose.

Prior to Storm's proposals, the jars used for this purpose were mostly mechanical. They had links or latches or springs of various sorts. There had been earlier proposals to employ hydraulic systems in jars, but these were not successful. Storm was the first to provide the industry with a commercially successful hydraulic jar.

Bowen has manufactured and supplied the industry with a hydraulic jar under its license from Storm since 1947. The Bowen hydraulic jar has largely taken the place of the earlier mechanical jars.

In some applications, perhaps mechanical and hydraulic devices may be the equivalent. I do not regard them as equivalent in the present case, however. They were held not to be the equivalent

in Lawrence v. Hunt Tool Co., D.C., 142 F.Supp. 329, affirmed by the Court of Appeals 5 Cir., 242 F.2d 347, and the situation here is the same.

Moreover, it is clear that Storm made a decided improvement on the earlier jars, and particularly an improvement on the earlier proposals for hydraulic jars, such as those of the Wigle patent 1,637,505, the Maxwell patent 1,804,700, and the Collett patent 2,180,223. Storm "balanced" the forces of the mud in the well upon his jar. This was what made it practical and commercially successful. Nowhere in the prior art is there any teaching of a balanced hydraulic jar.

Accordingly, I am of the opinion that the decision of the Patent Office that Storm was entitled to claim 6 of reissue patent 23,354 was correct.

The granting of the reissue by the Patent Office was merely to correct an error made in the prosecution of the original storm patent 2,499,695. The record shows that the Examiner in the Patent Office carefully considered Storm's right to claim 6 of reissue patent 23,354. The decision of the Examiner in this regard should be and is given a great deal of weight.

Regardless of what weight is to be given the decision of the Examiner, I find that reissue patent 23,354 fully complies with the requirements of Title 35 U.S.C. § 251. While this statute did not take effect until January 1, 1953, it applies retroactively to this reissue patent granted April 10, 1951. Southern Saw Service, Inc. v. Pittsburgh-Erie Saw Corp., 5 Cir., 239 F.2d 339.

In 1956 Houston Engineers started manufacturing its hydraulic jar. The Houston Engineers jar is that of the Harrison patent 2,802,703, granted August 13, 1957, on an application filed August 2, 1956.

I regard the Harrison hydraulic jar, as it is manufactured by Houston Engineers, as an improvement on the Storm hydraulic jar. It has a better valve arrangement. It does not avoid in-

fringement of the Storm patent, however. Storm is entitled to a 17-year monopoly on his invention. Title 35, U.S.C. § 154. The grant of a patent to Harrison on an improvement of Storm's hydraulic jar does not excuse infringement of the dominant Storm patent. Bryan v. Sid W. Richardson, Inc., 5 Cir., 254 F.2d 191, 197.

█ Initially, the Houston Engineers hydraulic jars were fully balanced, just like the Storm hydraulic jars made by Bowen. Then a slight change was made in the dimensions. I find that the change was not significant. It was like those discussed in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, and Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783, 786. The changes made do not avoid infringement. The doctrine of equivalents applies. The Houston Engineers jar is the equivalent of the Storm hydraulic jar.

█ Accordingly, I am of the opinion that plaintiffs possess valuable patent rights on the balanced hydraulic jar defined in claim 6 of reissue patent 23,354 in suit, and that these rights have been infringed by defendant. Judgment will be entered in favor of plaintiffs and against defendant, and against defendant on its counterclaim.

The following are filed as findings of fact and conclusions of law:

### Findings of Fact

1. Plaintiff, Lynn W. Storm, is the owner of the patent in suit, Re. 23,354, reissued April 10, 1951. Plaintiff Bowen-Itco, Inc., is the exclusive licensee under the patent in suit, Re. 23,354.

2. Claim 6 of the patent in suit, Re. 23,354, is valid. This claim is directed to a balanced hydraulic jar for pulling stuck objects from oil wells. The claim is to a combination of elements which consists essentially of an outer cylinder and an inner mandrel having a piston for moving through the cylinder. Either the cylinder or the mandrel can be connected to drill pipe for lowering into the well, and the other part connected to the stuck object or "fish". In the chamber in the cylinder, through which the piston moves, there is a portion of reduced internal diameter which fits closely around the piston. Also, there are seals at the top and bottom of the cylinder. The mandrel extends completely through both of these seals. The important feature of the tool is that the seals at the top and bottom of the cylinder have substantially the same internal diameter, so that the "rods" or parts of the mandrel which extend through them are of substantially the same diameter at the top and bottom. This is what causes the device to be "balanced". The main advantage of a balanced system is that the hydraulic action is then independent of hydrostatic pressures existing in the well as the result of fluid therein. This is important especially in deep wells. In operation of the jar, the chamber is filled with oil, and when tension is taken in the drill pipe tending to pull the device into its extended position, the action of the portion of reduced internal diameter on the piston is such that there is a restraining force until the oil flows between the two. When the piston moves on through the restriction, the stored up energy in the stretched drill pipe is suddenly released, and a strong blow is delivered to the fish. The tool is provided with impact faces which act as hammers and anvils for delivering the blows to the fish. The jar may be operated over and over again in the well, simply by raising and lowering the drill pipe, and due to the balanced feature, it operates substantially free from the influences of the fluid in the well.

3. The Storm patent in suit is not entitled to have pioneer status, but it does mark a decided advance in the art of removing stuck objects from oil wells. Storm was the first to supply the industry with a successful hydraulic jar, and the patent in suit is entitled to a reasonably broad range of equivalents.

4. Storm started working on his hydraulic jar in 1945 and by 1947 had it perfected and in commercial operation.

At the time Storm made his invention, the industry was using mechanical restraining devices in jars. These were not entirely satisfactory and there was a need for a better jar and for a hydraulic jar. Others than Storm had made various proposals, as to hydraulic jars, but had not been able to solve the problems encountered in deep wells where the hydrostatic pressure is high. Storm solved the problems.

5. The closest patent in the prior art is the patent to Maxwell No. 1,804,700. Maxwell was a Los Angeles patent attorney, and he proposed a hydraulic jar essentially like Storm's except that it was not balanced. The Maxwell patent issued in 1931, but no Maxwell jar was ever built or used, insofar as the record shows.

6. In 1925 some jars were built in accordance with the Wigle patent, 1,637,505. These are hydrostatic jars and used the mud in the well as the restraining means. These jars wore out due to the sand in the mud, and after a short trial in the field, the Wigle jars were abandoned.

7. Another proposal prior to Storm was the Collett hydraulic jar of patent 2,180,223. This jar had two pistons, the outside surfaces of which were exposed to well fluid. The structure is quite different than that proposed by Maxwell and Storm. The Collett patent does not teach the concept of balancing. Collett supposed that he had some advantage from having the jar unbalanced. Collett may have built some hydraulic jars, but the record is not clear as to whether they were like his patent or not, and there is no convincing evidence that any jars like his patent were ever used successfully in a well, even experimentally.

8. The Storm hydraulic jar has enjoyed marked commercial success. Except for defendant, the entire industry has respected the Storm patent in suit and paid him tribute.

9. During the prosecution of the Storm application for patent, the Examiner considered the Wigle and the Maxwell patents. The Collett patent was not cited by the Examiner, but since Collett adds nothing to Maxwell insofar as Storm is concerned, the failure to cite Collett has no probative force.

10. The patent in suit is a reissue of Storm patent 2,499,695 granted March 7, 1950. Claim 6 of the Reissue, here in suit, is broader than the claims allowed in said patent 2,499,695. Claim 6 in suit is not as broad as any claim ever cancelled from the original application, however. In reissuing Storm did not recapture any subject matter intentionally abandoned or dedicated in the original application. The application for reissue was timely, and defendant, Houston Engineers, did not acquire any intervening rights as the result of the reissue. The reissue of the original patent 2,499,695 was necessary to correct a mistake made by Storm and his attorney in failing to draw the claims of the original patent properly. The acts of Storm in reissuing fully comply with the requirements of Title 35 U.S.C. § 251. There was no deceptive intention; the original patent was defective by reason of the patentee claiming less than he had a right to claim; and the subject matter of claim 6 in suit is directed to an invention disclosed in the original patent. The Storm Reissue patent 23,354 is therefore valid, and claim 6 thereof is valid.

11. Claim 6 of the Storm patent, Re. 23,354, is infringed by defendant because of the manufacture and use, in the Southern District of Texas and elsewhere in the United States, of the hydraulic jar shown and described in the brochure of Houston Engineers, Inc., PX–13. The Houston Engineers hydraulic jar is that of the patent to Harrison, No. 2,802,703. It is correctly illustrated diagrammatically on the right hand side of PX–16.

12. The Houston Engineers hydraulic jar is like that of the Storm patent in suit except that it uses a different and improved valve arrangement. The improved valve does not alter the fundamental operation of the combination and does not avoid infringement. The first

Houston Engineers jars were made in 1956 and they were fully balanced. In March 1957 a change was made and the jars were slightly unbalanced, a change of one-eighth of an inch or less being made in the diameter of the rods. These changes in dimensions did not alter the tool sufficiently to avoid infringement. The operation of the jars after the change remained the same as before.

13. The Houston Engineers' hydraulic jar comes within the spirit of the Storm invention and within the scope of the asserted claim. Claim 6 in suit reads literally upon the Houston Engineers' hydraulic jar.

14. The infringement by defendant is deliberate and willful. Defendant had full knowledge of plaintiffs' patent rights and had actually leased and used the plaintiffs' Storm jar extensively for a number of years before it entered into its arrangement with Harrison, and before it manufactured any hydraulic jars.

Conclusions of Law

1. This court has jurisdiction of the subject matter in suit and over the parties involved.

2. The 1952 Patent Act governs the determination of the issues in this suit. Since the patent in suit is a reissue, the validity of the reissue is to be adjudicated under Title 35 U.S.C. § 251.

■ 3. Under Title 35 U.S.C. § 282, the patent in suit is presumed to be valid, and the burden of establishing invalidity rests on the defendant. The presumption of validity in the present case is strengthened by the fact that the Patent Office considered the most pertinent prior art during the examination of the original and reissue applications for the patent in suit.

■ 4. The range of equivalents accorded a patent depends upon whether or not it is a pioneer. An important improvement in an art is entitled to a reasonable range of equivalents, even though the improvement cannot be classed as a pioneer.

■ 5. Infringement of an improvement patent on a combination of elements is not avoided by using a different but known kind of valve in the combination instead of the one shown and described in the patent, nor by varying dimensions without changing the principles of operation of the combination.

■ 6. The making of a patentable improvement on a patented combination does not give a defendant a license to infringe the patent on the combination.

■ 7. Where there is a long felt want for a given tool, and no one seems to be able to solve the problems presented, the one who takes the last step is entitled to a reward, and the fact that other people were working on the problems, without success, shows that the solution was not obvious to men skilled in the art.

■ 8. The test for invention, as laid down in Title 35 U.S.C. § 103, is whether the subject matter would have been obvious to a person having ordinary skill in the art "at the time the invention was made," not what is obvious after the patent has issued. It is comparatively easy, once an improvement has been made and disclosed, to take this and that from the prior art and achieve a nunc pro tunc solution of the problems confronting an inventor when he made the invention, but, in law, what is obvious now is not material evidence on the question of the validity of a patent.

■ 9. Where a patent has enjoyed marked commercial success, and tribute has been paid to the inventor over an extended period of years by the entire industry involved, and where the competition is keen, there is very persuasive evidence that the patent is valid.

Copies hereof will be forwarded by the clerk to counsel of record, who will draft and submit Decree conforming herewith.