**HOUSTON ENGINEERS, INC.,**
Appellant,

v.

**BOWEN-ITCO, INC. and Lynn W. Storm,**
Appellees.

No. 19264.

United States Court of Appeals
Fifth Circuit.

Nov. 21, 1962.

Rehearing Denied Dec. 27, 1962.

James B. Simms, and Browning, Simms, Hyer & Eickenroht, Houston, Tex., for appellant.

Earl Babcock, Duncan, Okl., B. R. Pravel, Houston, Tex., for appellees.

Before RIVES, CAMERON and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment holding Claim 6 of United States Letters Patent Reissue No. 23,354, reissued April

10, 1951, to be valid and infringed. The judgment ordered an accounting to determine damages, and enjoined the defendant from further infringement. The opinion, findings of fact, and conclusions of law of the district court are reported at 192 F.Supp. 223.

The subject matter of the patent is a "jar" or tool for jarring stuck objects loose from well bores. When an object stuck in the bore of an oil well cannot be loosened and pulled out by a steady pull, it has been common for many years to operate "jars" to jar or hammer the object loose. In the colorful language of the trade, stuck objects are called "fish," the efforts to release them are called "fishing operations," and the pipe extending from the draw works of the rig to the fish is called the "fishing string" of pipe.

Jars, whether mechanical or hydraulic, have the same basic parts, consisting of: (1) telescoping inner and outer tubular parts, one connecting to the fishing string of pipe and the other to a grapple or other means of making contact with the fish; (2) a detent or restraining means between the inner and outer tubular parts to prevent their relative movement until, (a) in the case of an upward jar, the draw works of the rig has taken a strong pull on the fishing string, or (b) in the case of a downward jar, enough weight of the fishing string has been slacked off; when in either event the fishing string is suddenly released for the jar or hammer effect; (3) impact faces on either part to impart and receive the force of the blow, that is to act as the hammer and the anvil.

The first jars used were mechanical and some mechanical jars are still in use. They have, however, been largely replaced by hydraulic jars. The difference between the two is in the detent; that is, in whether the means of restraining movement between the two parts is mechanical or hydraulic. Except for the detent there is nothing hydraulic about any of the jars.

The direction of the blow to loosen the fish is usually upward. Some mechanical jars, however, are capable of both upward and downward jarring operations, and are called two-way jars. Even one-way upward jars are usually capable of downward bumps by simple release from the draw works of the weight of the fishing string. In that event the force of the bump is not intensified by the stored energy effect of the sudden release of the detent. For a jar to be capable of actually jarring or hammering both upwardly and downwardly, it must have: (1) a detent which can restrain and release the movement of the stroke in either direction, and (2) two sets of impact faces, one for the upward blow and the other for the downward blow.

The first patent for a hydraulic or hydrostatic jar was No. 1,637,505, issued to W. B. Wigle on August 2, 1927. It was a one-way jar striking an upward blow. It made use of the well fluid as a restraining means. The sand and mud in that fluid was so abrasive that the Wigle tool had a short life. Its use began in the early part of 1925 and it was abandoned in 1927, practically as soon as the patent was issued.

On April 5, 1927, William H. Maxwell, a Los Angeles patent attorney, filed application for the first patent on a sealed-in hydraulic jar. It too was a one-way jar striking an upward blow. The patent was issued on May 12, 1931 as No. 1,804,700. It appears from the evidence in this case that the jar was never actually used. As the patentee of a truly hydraulic jar, however, Maxwell was a pioneer. The district court found that:

> "Storm 'balanced' the forces of the mud in the well upon his jar. This was what made it practical and commercially successful. Nowhere in the prior art is there any teaching of a balanced hydraulic jar.
>
>      \*     \*     \*     \*     \*
>
> "The closest patent in the prior art is the patent to Maxwell No. 1,804,700. Maxwell was a Los Angeles patent attorney, and he proposed a hydraulic jar essentially like Storm's except that it was not bal-

anced. * * *" (192 F.Supp. 225, 227.)

In explaining what is meant by "balance," the district court said:

"The important feature of the tool is that the seals at the top and bottom of the cylinder have substantially the same internal diameter, so that the 'rods' or parts of the mandrel which extend through them are of substantially the same diameter at the top and bottom. This is what causes the device to be 'balanced'. The main advantage of a balanced system is that the hydraulic action is then independent of hydrostatic pressures existing in the well as the result of fluid therein. This is important especially in deep wells. * * *" (192 F.Supp. at 226.)

The appellant insists that Claim 6, as well as all other claims of the Storm patent, was not only limited to a balanced hydraulic jar, but was required by the Patent Office to be limited to a two-way jar. If so limited, the validity of Claim 6 is not attacked, and it would unquestionably be valid. The one-way jar of the defendant, Houston Engineers, Inc., would not, however, constitute an infringement. Thus, as a first step in the decision of the case, we turn to the interpretation of Claim 6 of the patent in the light of the actions and rulings of the Patent Office. The findings of fact by the district court compare Claim 6 with the claims in the original patent, but do not compare that claim with the cancelled claims of the reissue application, and do not discuss the reissue patent file wrapper.

Claim 6 reads as follows:

"6. A well tool comprising inner and outer concentrically arranged tubular parts movable longitudinally relative to each other, means for connecting one of said parts to an operating string, means for connecting the other of said parts to an object stuck in a well bore, said parts forming a closed fluid chamber, said inner part extending completely through the chamber, a piston on the inner part, sealing means on the outer part at each end of the chamber through which said inner part extends, *said chamber having a portion of reduced internal diameter between its ends in which the piston is adapted to move upon relative longitudinal movement of said inner and outer parts,* the annulus of the piston being slightly smaller than said portion of reduced internal diameter to permit of fluid flow from one side of the piston to the other side thereof as the piston moves in said portion, the internal diameters of said sealing means being substantially the same to provide uniform chamber volume regardless of the relative positions of said inner and outer parts, *and co-acting impact faces on the inner and outer parts arranged to contact when the parts reach the limit of their movement relative to each other in either direction.*" (Emphasis supplied.)

The original patent No. 2,499,695 had been granted on March 7, 1950, and contained three claims admittedly limited to a balanced two-way jar. The application for the original patent was filed on March 18, 1947. The examiner rejected Claims 1–12, commenting: "The Wigle and Maxwell patents have like piston and cylinder elements for producing a jar in the upward direction." In response, applicant's attorney made it clear that each claim was restricted to a two-way jar. "None of the references cited disclose a restricted cylinder in a tubular body and intermediate the ends thereof with a piston on the inner part of a diameter to fit in the cylinder snugly and positioned to move entirely through and beyond the cylinder in either direction so as to operate either on upstroke or downstroke. This feature is brought out in one way or another in each of the claims. Neither Maxwell nor Wigle will operate on downstroke." Again the examiner rejected all claims, commenting: "It is devoid of invention to make the jars of Maxwell or Wiggle (sic) 'two-

way' jars as taught by Beck (upward and downward jarring), by making the 'leaking' pistons double acting as taught by Merrick."[1] In response the applicant amended his claims, and for the first time emphasized "balance," significantly, however, as an aid to the functioning of the jar both upwardly and downwardly:

> "It was thoroughly pointed out to the Examiner during the recent interviews, that Applicant's hydraulic jar is so designed that uniform chamber volume and pressure will be maintained in the fluid chamber regardless of the relative positions of the inner and outer parts. This is the main characteristic of the invention and is desirable and important in that it permits of the present jar functioning to jar both upwardly and downwardly."[2]

Thus, hydraulic balance was first mentioned in the amendment filed October 24, 1949, over two and one-half years after the application was filed, and it was claimed simply as an aid to the functioning of a two-way jar.

The inventor, Mr. Storm, testified that when the original patent issued, he realized immediately that "we were unfairly limited in our claims." On April 24, 1950, only a month and a half after the original patent had been granted, Storm, through a different attorney, filed an application for the reissue.

The new claims in the original application for the reissue patent were numbered 4 through 7. Those claims were not limited to a two-way jar. Claim 4, for example, used the expression, " * * said chamber having a portion of restricted internal diameter forming a cylinder coacting with said piston. * * * " The examiner rejected Claims 4–7 as met by either Maxwell or Wigle, and commented: "Unless the claims specify that the restricted internal cylinder portion is located intermediate the ends of the fluid chamber these claims do not specify a 'two-way jar' and hence are fully readable on the 'one-way jars' of Wigle and Maxwell."

In response the applicant amended Claims 4–7 in several respects and included in each the insertion "intermediate its ends," which the examiner had stated would be necessary to specify a "two-way jar." The applicant also added Claims 8, 9 and 10. Claims 8 and 9 also used the expression "intermediate its ends." Claim 10 was broad enough to cover a balanced one-way jar, since it read:

> "10. A well tool comprising inner and outer telescopically arranged tubular parts movable longitudinally relative to each other, means for connecting one of said parts to an operating string, means for connecting the other of said parts to an object stuck in a well bore, a

---

1. Referring to Beck 2,474,459, June 28, 1949, 255–27, and Merrick 1,584,884, May 18, 1926, 188–96.

2. The importance of balance to a two-way jar is clearly explained in appellant's brief:
   "Balance *in the two-way jar* does have special significance. When the weight of the fishing string is supported by the detent to jar down, it is the hydraulic fluid in the upper part of the oil chamber that supports the load while the oil bleeds past the piston. It may do so because it is relatively incompressible even at high pressures (Crook, R. 414). On the other hand, if the oil chamber is unbalanced, there will be a pocket of space in the upper part of the chamber when the green cylinder starts to pass down over the blue piston on the downstroke. This space will immediately compress, allowing the green cylinder to pass over the blue piston without any restraint (Crook, R. 483).
   "On the other hand, the upward jar can still be struck even with unbalance. This is because the lower part of the oil chamber will be filled with oil and the orange part can only move up over the piston as fast as the oil beneath the piston can be bled between the green reduced diameter portion and the piston. Thus, the hydraulic detent is effective in a one-way unbalanced hydraulic jar, but balance is nearly essential in a two-way hydraulic jar."

closed annular liquid-filled chamber formed between the inner tubular part and the outer tubular part, sealing means at the ends of said chamber, a piston on the inner tubular part, *said chamber having a portion of restricted internal diameter forming a cylinder into and out of which the piston is adapted to move,* the annulus of said piston being spaced from said cylinder to permit of fluid flow around said piston from one side to the other side thereof as the piston moves in the cylinder, said sealed ends of said chamber being of substantially the same diameter to provide uniform chamber volume regardless of the relative positions of said inner and outer parts, *and coacting impact delivering means on the inner and outer parts adapted to contact when the parts reach the limit of their movement relative to each other in one direction."* (Emphasis supplied.)

Again the Examiner found no claims allowable, and commented: "Claims 4–7 and 10 are rejected as being unpatentable over Maxwell, Fig. 3 or Wigle Figs. 9 or 10 in view of Daillens or Knoerr. It would not amount to invention in the one way dashpot type jar tools of Maxwell or Wigle, to make the sealed ends of the 'chamber' of substantially the same diameter as taught by Knoerr (Figs. 1, 3) or Daillens (Fig. 1)." [3]

What the examiner was clearly saying is that the incorporation of "balance" without the restriction to a "two-way jar" would not justify allowing a claim. In response the applicant cancelled Claims 4 to 10, inclusive, and rewrote Claims 1, 2 and 3 as Claims 11, 12 and 13 (numbered in the reissue patent 4, 5 and 6). The applicant's "Remarks" stated: "Claims 1, 2 and 3 are rewritten as claims 11, 12 and 13, respectively, to more accurately define the invention in terms of the structure disclosed and to remove the functionality, vagueness and indefiniteness which the Examiner has pointed out." There was no remark that Claim 13 (6 in the reissue patent) or any other claim was broad enough to cover a balanced one-way jar. Without further ado, the examiner allowed the reissue.

Throughout, the examiner explicitly and persistently adhered to the position that a claim was not allowable unless it specified a "two-way jar." According to the file wrapper, the applicant appears to have acquiesced in that position. He had no difficulty in expressing a claim clearly broad enough to include a one-way jar as is evidenced by cancelled Claim 10, which we have quoted. He should have adhered to Claim 10 or some equally clear claim if he wanted to test his right to a claim covering a one-way jar. In the light of the file wrapper, the conclusion seems inescapable that the provisions of Claim 6 which we have placed in italics operate to restrict that claim to a two-way jar.

The district court held Claim 6 valid, and we agree. When restricted to a two-way jar its validity is not questioned. It is equally clear, however, that Claim 6 is not infringed by the one-way jar of the defendant, Houston Engineers, Inc.

The judgment is accordingly reversed with directions to enter judgment for the defendant.

Reversed.

3. Knoerr and Daillens referred to are:

| "Knoerr | 2,077,760 | Apr. 20, 1937 | 166–1 B |
| "Daillens (French) | 399,700 | Apr. 29, 1909 | 255–27 uxr |
| | | (1 sht. dwg. 2 pp. spec.)" | |